RELIANCE INSURANCE COMPANY,
Plaintiff,

v.

Jack E. BROWN, Trustee; United States of America, Department of Treasury, IRS; William F. Smith, Attorney General, Department of Justice, Defendants.

No. 83–4101–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

Jan. 5, 1984.

**215**

Lloyd Hellman, Keith Witten, Kansas City, Mo., for plaintiff.

Ludwig H. Adams, Trial Atty., Tax Div., Washington, D.C., for defendants.

## ORDER

SCOTT O. WRIGHT, District Judge.

This matter comes before the Court on the appeal of the defendant United States from a Memorandum Opinion and Order of the Bankruptcy Court, filed on February 15, 1983, in which it was held that certain assets now in the possession of the Trustee were received by him subject to a constructive trust. The Internal Revenue Service (IRS) argues on appeal that plaintiff Reliance Insurance Company has no standing to bring this action, that the Bankruptcy Court erred in imposing the constructive trust, and that federal tax liens attached to the funds and are not defeated by the constructive trust. For the following reasons, the decision of the Bankruptcy Court will be affirmed.

The Bankruptcy Court made the following findings of fact. This litigation arose out of a fraudulent insurance scheme involving the debtor, Donald Kubovchick, who joined Associated Underwriters (later known as A/U Agency, Inc.) as a "producer" in charge of placing special risk or excess coverage with foreign and domestic insurance companies. In 1975, Kubovchick began to issue A/U Agency "cover notes" to insureds, even when his efforts to place the requested insurance coverage with legitimate insurance companies had proved unsuccessful. Kubovchick used two fictional names, E & S Agency and John Keiser, to "accept" the insurance coverages which had not been placed with legitimate companies. E & S and Keiser acted as repositories for the net premiums (after deduction for commissions) which were paid for those coverages not legitimately placed.

Kubovchick's scheme was discovered in May, 1978, by the A/U Agency. The gross premiums paid by those seeking insurance for coverages which were not placed with legitimate companies were between $1,200,000 and $1,500,000. From this amount, a deduction was made of approximately 10%

as commission for local agents, and another deduction was made as a commission for the risk broker, A/U Agency. This commission was split between Kubovchick as producer and A/U Agency, with 60% going to Kubovchick and 40% to A/U. The remainder of the premiums, $1,066,897.63, was paid to the fictional E & S Agency.

Kubovchick, in order to avoid discovery of his scheme, used some of the funds deposited with E & S Agency to hire and pay claims of adjusters and other necessary personnel. Kubovchick failed, however, to pay federal income taxes on the money. He did arrange to have all insurance claims adjusted and paid, and also used some of the funds to purchase stocks for himself and his wife and to pay his personal expenses.

In May, 1978, the scheme was discovered and $309,541.34 remained in the E & S account. Kubovchick turned over a cashier's check in that amount to A/U for administration of the fund. Later, he also turned over to A/U corporate stock, some titled in his own name and some held in his wife's name, which had been purchased with funds from the E & S Agency account or with the proceeds of those funds. These stocks were liquidated for $155,585.27 and, together with the proceeds of the checking account, were turned over by A/U to Daniel P. Reardon, an attorney who served as "trustee" of the funds. Reardon held the funds for a period of time during which he made disbursements for various purposes, including the return of unearned premiums of cancelled insurance and the payment of claims after adjustment. Kubovchick apparently made some suggestions as to how the funds should be handled, but did not suggest that the funds belonged to him.

In 1978, Reardon delivered the remainder of the funds to Jerry B. Buxton, Director of the Missouri Division of Insurance. At that time, the funds totalled $242,813.66. State court proceedings were filed by various parties asserting claims to those funds, and those proceedings concluded when an interpleader action was filed by Buxton in the United States District Court for the Western District of Missouri.

On February 11, 1980, Gary Public Transportation, Dan-O-Way Charter Lines and Downen Enterprises filed an involuntary petition in bankruptcy against Kubovchick, and an order for relief was entered on March 17, 1980. On March 25, 1980, the District Court ordered that the funds involved in the federal interpleader action be paid over to Jack Brown as Interim Trustee of the bankruptcy estate of Kubovchick. Funds of approximately $278,000 were transferred on April 19, 1980.

On December 1, 1981, an involuntary petition in bankruptcy was filed against A/U Agency, and the order for relief was entered on December 22, 1981. On June 18, 1982, the Court ordered the consolidation of the bankruptcy cases of A/U Agency and Donald Kubovchick.

Reliance Insurance Company (Reliance), which acted as a reinsurer of A/U Agency against fraudulent acts committed by A/U's employees, brought this suit on March 19, 1982 to impose a trust on the funds for the benefit of those parties who paid premiums to Kubovchick for insurance coverage which was never placed with legitimate companies. Those parties form the vast majority of the creditors of the Kubovchick and A/U Agency estates. The only parties opposing the action brought by Reliance are the IRS and Kubovchick. The IRS has filed a claim in the amount of $52,058.81 for unpaid taxes due from Kubovchick, and has requested that its claim be paid from these funds. Kubovchick opposed Reliance's action, arguing that his unpaid taxes should be paid from those funds.

Trial was held before the Bankruptcy Court on September 21 and 29, 1982, and the Court found that the funds held by the Trustee were received by him subject to a constructive trust for the benefit of those insurance claimants able to establish their right to share pro rata in a distribution of these assets. In reaching its decision to recognize the existence of a constructive

trust, the Bankruptcy Court noted that although it was impossible for each individual claimant to trace the funds deposited with the Trustee, the Court nonetheless was satisfied that all of the funds in question were those fraudulently procured by Kubovchick or the proceeds of those funds. The Court specifically found that the funds held by the Trustee are composed exclusively of all the remains of the insurance premiums paid to Kubovchick by the insurance claimants and the proceeds thereof.

The Bankruptcy Court also found that Kubovchick would be unjustly enriched as a result of his wrongdoing if a constructive trust were not imposed because Kubovchick's debt to the IRS for unpaid taxes is non-dischargeable in bankruptcy. The Bankruptcy Court noted that if these funds remained part of the general estate, the priority granted to the claims of the IRS would result in the tax claims being satisfied in full before any of the claims of the general creditors were satisfied, thereby relieving Kubovchick of a non-dischargeable debt. The Court concluded that the evidence in support of the constructive trust was clear, cogent and convincing, and that the Bankruptcy Trustee thus received the funds subject to a constructive trust on behalf of the insurance claimants.

In addition, the Bankruptcy Court found that Reliance had standing to bring the action to impose a constructive trust, as Reliance stands to benefit from the imposition of the trust to the extent that payments from the trust to the insurance claimants would reduce any contingent liability Reliance may have to the claimants.

██ In reviewing the Bankruptcy Court's findings of fact, the District Court is to sit as an appellate tribunal, not a finder of fact. *Valley National Bank v. Bush,* 696 F.2d 640, 643 (8th Cir.1983); *In re Windle,* 653 F.2d 328, 331 (8th Cir.1981). The Bankruptcy Court's findings of fact must be affirmed unless clearly erroneous. Due regard must be given to the Bankruptcy Judge's opportunity to assess the credibility of witnesses. *Solari Furs v. United States,* 436 F.2d 683, 684 (8th Cir.1971);

*Borg-Warner Acceptance Corp. v. Fedders Financial Corp.,* 614 F.2d 399, 402–03 (8th Cir.1980). "The district court, however, must independently determine the correctness of the ultimate legal conclusion adopted by the Bankruptcy Judge on the basis of the facts found." *Id.* at 403. With these standards in mind, this Court must now consider the following arguments advanced by the IRS on appeal: (1) whether the Bankruptcy Court erred in imposing the constructive trust; (2) whether the priority scheme of the Bankruptcy Code allows the constructive trust to defeat the tax lien; and (3) whether Reliance has standing to bring an action for a constructive trust in this case.

██ As recognized by the Bankruptcy Court, the Bankruptcy Code provides that a trustee succeeds only to the title and rights to property that the debtor possessed. 11 U.S.C. § 541(a)(1). Where the debtor is in the possession of property subject to a trust, the estate generally will hold such property subject to the outstanding interest of the beneficiaries. 4 *Collier on Bankruptcy* ¶ 541.13 (15th ed. 1980). Where a constructive trust is involved as a result of wrongdoing, such as by the conversion of money or property belonging to another, the Bankruptcy Trustee will be ordered to turn the property over subject to the tracing requirement. *Id.* Under Missouri law, constructive trusts are used to remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud. *Schultz v. Schultz,* 637 S.W.2d 1, 4 (Mo. 1982). Constructive trusts are used to prevent fraud by making the person who has wrongfully acquired property, or who has acquired property under such circumstances as make it inequitable for him to retain it, a trustee for the person defrauded or injured by the fraudulent conduct. *Suhre v. Busch,* 343 Mo. 679, 123 S.W.2d 8, 15 (1938). The evidence in support of a constructive trust must be clear, cogent and convincing. *Crites v. Sanford,* 609 S.W.2d 244 (Mo.App.1980).

218

■ The appellant contends that no constructive trust should be imposed in this case, arguing that the insurance claimants have not been damaged because they received insurance protection through Kubovchick's illegal operation as no claims went unpaid. It seems clear, however, that the claimants were damaged by Kubovchick's scheme, because the money obtained by Kubovchick was not used for the intended purpose of procuring legitimate insurance coverage, rather, the insurance claimants were the victims of an illegal scheme which deprived them of the valid insurance protection they expected. As the Bankruptcy Court noted, Kubovchick knew that the claimants were relying on him to obtain insurance through legitimate insurance companies, and that the fictional E & S Agency never had reserves of more than $1,000,000, an amount grossly inadequate to support a legitimate insurance company. In addition, the Bankruptcy Court correctly recognized that unjust enrichment would result from the failure to impose the constructive trust because the priority claims of the IRS would be satisfied out of the funds remaining in the general estate before any of the other claims of the general creditors could be satisfied.

■ The appellant next argues that the tracing of the constructive trust funds is insufficient, and that the sufficiency of the tracing must be determined under federal law in order to comport with the priority scheme established by Congress when it enacted the Bankruptcy Code. The appellant correctly points out that the question of whether a constructive trust, which cannot be traced to specific assets, will attach to general funds held by the trustee is a matter of federal law which requires the tracing of funds to an identifiable trust in the hands of the trustee. *Matter of Kennedy & Cohen, Inc.*, 612 F.2d 963, 966 (5th Cir.1980).

■ In this case, however, there was abundant evidence demonstrating what happened to the fraudulently obtained funds, and there was no evidence of commingling. The Bankruptcy Court specifically found that funds held by the trustee are composed exclusively of the remains of the insurance premiums paid to Kubovchick by the insurance claimants and the proceeds. This factual finding of the Bankruptcy Court is not clearly erroneous, and will not be disturbed on appeal. Where specific trust assets are identified, constructive trusts imposed by state law may be imposed against those assets, and the assets do not become part of the bankrupt's estate. *Matter of Kennedy & Cohen, supra*, 612 F.2d at 966. In light of these legal standards and the factual circumstances surrounding this case, this Court concludes that the imposition of the constructive trust was proper, and that the tracing requirement was satisfied.

■ Next, the appellant argues that the constructive trust imposed by the Bankruptcy Court on February 15, 1983, does not defeat the federal tax liens because the liens arose at the time of the assessment of the taxes, an event which took place prior to the Bankruptcy Court's order. The basic rule regarding the creation of constructive trusts, however, is that "the decree establishing the constructive trust amounts to a holding that the defendant ought to be treated as if he had been a trustee for the plaintiff from the time the defendant began to hold the property unconscionably. The constructive trust does not exist merely because of the wrongful holding, but requires a court decree for its origin and this decree is retroactive in effect to the date when the unlawful holding began." Bogert, *The Law of Trusts*, p. 288 (5th ed. 1973). Accordingly, the constructive trust arose prior to the time the tax liens are claimed to have arisen, and, therefore, the imposition of the constructive trust relates back and defeats the tax lien.

■ Finally, the appellant argues that Reliance has no standing to bring an action to impose a constructive trust because Reliance has no claim to the trust funds. As the Bankruptcy Court observed, the question of standing involves whether the party invoking jurisdiction has a personal stake in the outcome of a controver-

sy, and whether the dispute touches on the legal relations of parties having adverse legal interests. *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The Bankruptcy Court found, and this Court agrees, that because the fund in question is not enough to satisfy all the existing insurance claimants in full, Reliance may ultimately be held liable to these claimants under its insurance policy with A/U. Reliance, therefore, has a "personal stake" in the outcome of this controversy in that it has a direct monetary interest in seeing that the fund is applied to satisfy the claims of the insurance claimants. Similarly, Reliance has an adverse legal interest as it desires to lessen its potential liability to the insurance claimants. This Court is in agreement with the Bankruptcy Court's assertion that to deny Reliance standing at this time could result in a situation where questions of great effect on Reliance's situation would be decided before Reliance's liability became an actual obligation. Accordingly, the Bankruptcy Court did not err in concluding that Reliance has standing to bring this action.

Based on factual findings, which were clearly supported by the evidence, the Bankruptcy Court correctly concluded that the assets held by the Trustee were received by him subject to a constructive trust on behalf of all insurance claimants. Therefore, it is hereby

ORDERED that the Memorandum Opinion and Order of the Bankruptcy Court filed February 15, 1983, is affirmed in its entirety.