Anna M. **PROVENZA**

v.

V. Charles **RINAUDO**, et al.

Civ. No. Y–83–1280.

United States District Court,
D. Maryland.

March 6, 1984.

Michael Marshall, Baltimore, Md., for plaintiff.

Stephen J. Immelt, Asst. U.S. Atty., Baltimore, Md., for defendants Patricia E. Swann, A.J. DeKennis, and Internal Revenue Service.

Howard G. Goldberg, and Michael James Kelly, Baltimore, Md., for defendants Robert J. Schultze, V. Charles Rinaudo, and Loyola Federal Savings & Loan Association.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This is a civil action in which the plaintiff seeks damages for alleged violations of her constitutional and common law rights to privacy. The alleged violations were said to have occurred in the course of an IRS investigation into liability for federal income taxes for the years 1977 and 1978. Bank and federal defendants seek summary judgment asserting that the plaintiff has failed to state a claim on which relief can be granted. Bank defendants have also requested an award of costs, including attorneys' fees. Plaintiff has moved for summary judgment alleging there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law.

The IRS initiated an investigation to determine plaintiff's possible tax liability when it found no record that the plaintiff had filed federal income tax returns for the years 1977 and 1978. Defendant Patricia Swann was the revenue agent assigned to the case; defendant Algard DeKennis was her supervisor at that time. On April 1, 1980, Swann served an IRS summons on Loyola Federal Savings and Loan, seeking information regarding interest income earned by the plaintiff during the years in question. The summons was returnable by April 16, 1980. On April 9, 1980, Loyola sent the requested information to the IRS. At the time the summons was sent, Swann alleges that she directed her secretary to send a copy of the summons to the plaintiff; there is, however, no record that a certified copy was sent.

Swann served a second summons on Loyola on August 27, 1980, requesting interest information for the above tax years and for the tax year 1980. A certified copy of this summons was sent to the plaintiff, who subsequently asked that Loyola not comply with the summons. There is dispute as to whether or not Loyola did comply. Upon learning of the plaintiff's position, the IRS returned to Loyola all information received from the bank.

A summons enforcement action was brought in this Court on January 9, 1981, to enforce the August 27 summons. *U.S. & Patricia Swann v. Loyola Federal Savings and Loan Association,* J–80–3026 (D.Md.). Plaintiff did not intervene in this proceeding to prevent enforcement. On

January 12, 1981, an order enforcing the summons was entered and the summons was subsequently served on Loyola.

On March 29, 1983, plaintiff filed suit against federal defendants Swann, DeKennis, and the IRS, and against bank defendants Rinaudo, Schultze and the bank alleging violations of her constitutional and common law rights to privacy. That action filed in the state court was properly removed to this Court.

## FEDERAL DEFENDANTS

Plaintiff's claim against the federal defendants is based on an alleged violation of her right to privacy in that the April 1st summons issued by the defendants, which resulted in the IRS obtaining bank records, was procedurally defective.

An examination of the statute which the defendants are alleged to have violated indicates that there are no grounds for the plaintiff's claim. Under 26 U.S.C. § 7602(a), the IRS is granted the authority to summons records for the purpose of determining an individual's tax liability. When such a summons is served on a third party record keeper, such as a bank, 26 U.S.C. § 7609(a) requires that notice of the summons be given to the person whose records are being summoned. The purpose of the notice provision is to allow the noticee to intervene to quash the summons. 26 U.S.C. § 7609(b). It is this notice provision that the federal defendants are alleged to have violated and to have caused injury to the plaintiff's constitutional and common law rights to privacy.

The parties do not deny that plaintiff did not receive the requisite notice. The Supreme Court has singled out comparable notice provision as an important part of the administrative process necessary to the granting of such a summons. *U.S. v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The issue, however, is not whether the lack of notice deprived the plaintiff of her opportunity to quash the summons but whether the lack of notice resulted in some other legally cognizable injury. At a subsequent date, plaintiff had the opportunity to quash but chose not to take advantage of it.

■ The sole purpose of § 7609 is to give the noticee an opportunity to raise defenses which are available under the law at the summons enforcement proceeding. The Fourth Circuit has recognized that the provisions of this and comparable statutes are not intended to expand substantive rights of the noticee. *U.S. v. Equitable Trust Co.*, 611 F.2d 492, 495 (4th Cir.1979). Hence, § 7609 does not create a right to privacy where none existed.

■ It is clear that plaintiff does not have a right to privacy in the summoned bank records. *U.S. v. Miller*, 425 U.S. 435, 442, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1975), settled that issue. A taxpayer has no Fourth Amendment expectation of privacy in the records of an account kept by a bank. *Miller* at 442, 96 S.Ct. at 1623. Bank records are not confidential communications, but instruments of commercial transactions. The bank customer has no inherent right to assert control over the release of a bank's records of his transactions. *Clayton Brokerage Co. v. Clement*, 87 F.R.D. 569, 571 (D.Md.1980). This is not a case where a summons has been issued to a taxpayer seeking access to his own books or testimony, nor is it a summons of information privileged by some confidential information. The summons sought were directed to the bank, and had to do with records in which the taxpayer has no proprietary interest. *Donaldson v. U.S.*, 400 U.S. 517, 523, 97 S.Ct. 534, 538, 27 L.Ed.2d 580 (1970). Plaintiff's reliance on the penumbral rights to privacy in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), is misplaced. "Such 'penumbral' rights are of a different order and a far more intimate nature" than the rights at issue in the instant case. *Von Lusch v. C & P Telephone Co.*, 457 F.Supp. 814, 818 (D.Md.1978).

■ Since there is neither a Fourth Amendment right to privacy, nor any other

constitutional right to privacy in the bank records, the alleged violation of § 7609 by the federal defendants did not cause injury to the plaintiff. Further, the fact that the information was eventually disclosed through the summons enforcement procedure means that the plaintiff's common law privacy rights, if any, were not seriously compromised by the federal defendants. *U.S. v. Bank of Moulton*, 614 F.2d 1063 (5th Cir.1980).

 Even if plaintiff had a claim which amounted to an injury to a legally protected right, there would be no cause of action against the federal defendants, because they are immune from suit. While the historical immunity of the federal government and its agents from suit no longer shields the government completely, the present federal defendants are immune. The IRS as an entity is absolutely immune from suit. A suit against the IRS, as any suit against an agency as an entity, is effectively one against the United States. *Dugan v. Rank*, 372 U.S. 609, 613, 83 S.Ct. 999, 1003, 10 L.Ed.2d 15 (1963); *Blackmar v. Guerre*, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); *Terrapin Leasing Ltd. v. U.S.*, 449 F.Supp. 7, 8 (W.D.Okl.1978).

 The United States may consent to be sued, *U.S. v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1975), and the federal government has waived immunity for some tort claims under the Federal Tort Claims Act, 28 U.S.C. § 1346, allowing agents of the government to be sued in a tort action. The Act, however, specifically excludes claims arising out of the assessment of any tax. 28 U.S.C. § 2680(c). Section 2680(c) has been interpreted broadly to preclude suits for damages arising out of allegedly tortious activities of IRS agents when those activities were in any way related to an agent's official duties. *Capozzoli v. Tracey*, 663 F.2d 654, 658 (5th Cir. 1981); *Stankevitz v. IRS*, 640 F.2d 205, 206 (9th Cir.1981); *Broadway Open Air Theatre v. U.S.*, 208 F.2d 257, 258–59 (4th Cir. 1953).

 Plaintiff relies on *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970), and asserts that the federal defendants are not immune from suit if plaintiff can demonstrate an injury by those defendants to a constitutionally protected right. Again, this reliance is misplaced. There has been no such injury. Further, even if there were, federal officials exercising discretionary functions, charged with unconstitutional acts, are entitled to qualified immunity. *Butz v. Economou*, 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978). The standard for qualified immunity has been recently refined in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Government officials performing discretionary functions are shielded from liability for civil damages if the conduct does not violate a clearly established constitutional right of which a reasonable person would have known. The actions taken by the federal defendants, to the best of their beliefs, were lawful actions in pursuit of their Congressional mandate to assess tax liability. Their inadvertant procedural error, if made, was not a sufficient act to overcome this qualified immunity. As to the alleged violation of a common law right to privacy, there is absolute immunity for the federal defendants. *Butz v. Economou* 438 U.S. at 495, 98 S.Ct. at 2905. The Fourth Circuit has recognized this distinction between constitutional claims and common law claims and extended absolute immunity for the latter to lower, as well as upper, level federal officials exercising their discretionary authority. *George v. Kay*, 632 F.2d 1103, 1105–6 (4th Cir.1980).

Thus, because the plaintiff has neither alleged a legally cognizable injury nor, if she had so alleged such an injury, has she stated grounds for overcoming sovereign immunity, the claim against the federal defendants must be dismissed, and their motion for summary judgment will be granted.

## BANK DEFENDANTS

 Plaintiff's case against the bank defendants is even more groundless.

Plaintiff alleges that bank compliance with the two summonses violated 26 U.S.C. § 7609(a) and thereby violated her right to privacy. The bank defendants' actions, if the plaintiff's charges are taken as true, consist of a too hasty response to the first summons, and a subsequent compliance with the second summons, when the records should have been withheld. It is not clear from the terms of the statute that the first act is a violation of the statute. The second act would have been a violation, but that violation did not compromise any right of the plaintiff. The records were returned to the bank, and subsequently secured through a proper summons enforcement procedure and plaintiff did not intervene to prevent the summons from being enforced. As noted, the plaintiff had no constitutional privacy rights in those records, *U.S. v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1975), and the records were properly turned over to the IRS by the bank defendants several months after the alleged violations of the statute occurred.

While the alleged non-compliance by the defendants with the terms of the statute was apparently not considered during the enforcement hearing, such technical violations would not have prevented the summons from being enforced. *U.S. v. Bank of Moulton,* 614 F.2d 1063, 1065 (5th Cir. 1980). Hence, no information was revealed by the acts of the bank defendants that would not have been revealed otherwise and there was no violation of privacy rights.

As the plaintiff fails to state a cause of action against the bank defendants, that motion for summary judgment must be granted. However, the motion for attorneys' fees will be denied. The prevailing litigant is ordinarily not entitled to collect attorneys' fees from the loser. *Alyeska Pipeline Co. v. Wilderness Soc.,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1974). Absent statute or enforceable contract, litigants pay their own fees. *Id.* at 257, 95 S.Ct. at 1621. A court may assess attorneys' fees for willful disobedience of a court order or when the losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1973). In order for a court to rely on its inherent power in assessing fees, the court must find that a party has acted in bad faith. *Robinson v. Ritchie,* 646 F.2d 147, 148 (4th Cir.1981). The record presented in the instant case contains no evidence that the plaintiff acted in bad faith.