In the Matter of Robert D.
JOHNSON, Bankrupt.

Bankruptcy No. 74–316–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 11, 1985.

Elsie L. Munsell, U.S. Atty. for E.D. Va., Alexandria, Va., Robert L. Gordon, Tax Div. Dept. of Justice, Washington, D.C., for IRS.

Mark W. Foster, Stephen E. Leach, Zuckerman, Spaeder, Moore, Taylor & Kolker, Washington, D.C., Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

Robert D. Johnson, the bankrupt, was engaged in a fraudulent pyramid or Ponzi scheme whereby he induced investors to provide funds for the purchase, import and resale of nonextant Portugese industrial wine. In fact, the bankrupt neither purchased nor sold industrial wine. Instead, Johnson used the invested funds to partially pay off previous investors, to cover personal expenses and to invest in various business ventures. On August 26, 1974, Johnson pleaded guilty to federal crimes of securities fraud and of mail fraud and was subsequently incarcerated.

Three defrauded investors filed an involuntary petition against Johnson on June 13, 1974 pursuant to section 59b of the former Bankruptcy Act of 1898, as amended ("the Bankruptcy Act"). This Court subsequently adjudicated Johnson as a bankrupt.

Johnson's statement of affairs indicated unsecured debts in the amount of $21,282,-443.00. As of February 28, 1985, the assets of the estate consisted of $1,604,274.38 in cash. The Internal Revenue Service ("IRS") and the Commonwealth of Virginia filed tax claims in the total amount of $4,230,090.17. The IRS filed a claim for unpaid income taxes for tax year 1972 on October 11, 1974. On December 10, 1974, the IRS filed an amended claim which included a claim for income taxes for both tax years of 1972 and 1973. Thereafter, on April 21, 1976, the IRS filed a claim for unpaid income taxes for 1974. Finally, on September 3, 1976, the Commonwealth of Virginia filed a claim for unpaid state in-

come taxes for tax year 1974 in the amount of $141,664.79.

On August 28, 1984, the Trustee in Bankruptcy ("trustee") filed an objection to the three tax claims asserted by the IRS and to the single proof of claim filed by the Commonwealth of Virginia[1]. The trustee's objection is founded on the following assertions. First, the trustee objects to the proofs of claim in that they cannot be satisfied out of the assets of the bankruptcy estate. The trustee argues that the claims may not be satisfied because, under Virginia common law, the trustee holds the assets of the estate in a constructive trust for the defrauded investors. Additionally, the trustee claims that the IRS' claim for tax year 1974 and the Commonwealth of Virginia's claim were not timely filed.

In the response of the IRS to the trustee's objection, the Government argues that the trustee is not entitled to assert a constructive trust theory on behalf of the defrauded investors who have failed to take any action on their own behalf. The IRS maintains that the single question present in a proceeding initiated by the filing of an objection to a proof of claim is whether the bankrupt is liable for the income taxes claimed. In response to the trustee's second objection, the IRS argues that the 1974 amendment related back to the original claim which was filed timely[2].

Seemingly in response to the IRS' argument that an objection to a proof of claim was not the proper vehicle by which to raise a constructive trust argument, the trustee filed a complaint for declaratory judgment on March 21, 1985. In its complaint, the trustee seeks a judgment of this Court declaring that the tax claims filed by the IRS for tax years 1972–74 cannot, as a matter of law, be satisfied out of the assets of the bankrupt's estate because said as-

---

**1.** The trustee filed a complaint for declaratory judgment on March 21, 1985 which is discussed hereafter.

**2.** The Commonwealth of Virginia has made no appearance in this matter nor filed any pleading and based upon the proper objection of the

trustee to the Commonwealth's proof of claim, the claim for unpaid state income taxes for tax year 1974 in the amount of $141,664.79 will be disallowed. R.Bankr.P. 306(b); R.Bankr.P. 302(e).

sets are held in a constructive trust for the defrauded investors.

Subsequently, the IRS filed a motion to dismiss trustee's complaint pursuant to Rule 712(b) of the Rules of Bankruptcy Procedure and Rule 12(b) of the Federal Rules of Civil Procedure. Specifically, the IRS moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1); 12(b)(6). After noting that the trustee was seeking the same remedy under the complaint as he was under the objection to the IRS proofs of claim, the Government once again argues that the trustee does not have the requisite standing to raise a constructive trust argument in his own right.

Federal courts are courts of limited jurisdiction. *See generally* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3522, 60–81 (1984). Article III of the United States Constitution limits federal courts to adjudicating actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. One of the most important Article III doctrines is that the party invoking the federal court's jurisdiction must have standing. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975); *Centre for Independence of Judges v. Mabey*, 19 B.R. 635, 639–40 (D.Utah 1982).

■ In order for a party to have the standing necessary to invoke federal jurisdiction, the plaintiff must have suffered actual or threatened injury, the injury must be traceable to the defendant's conduct and the injury must likely be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, ——, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

In those instances in which the plaintiff has alleged an injury sufficient to support a finding of an Article III "case" or "controversy," the Supreme Court of the United States clearly has held that the plaintiff must be asserting his own legal rights and interests and not those of a third party not before the court. *Warth v. Seldin*, 422 U.S. at 499–500, 95 S.Ct. at 2205. In other words, the plaintiff must have a personal stake in the outcome of the litigation. *See, e.g., Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976); *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

In the case *sub judice*, the trustee argues in his opposition to the IRS' motion to dismiss that he has the requisite personal interest in the outcome of the lawsuit. In support of this position, the trustee maintains that "[i]f the trustee were arguably to misapply the funds in this estate by paying them over to the Internal Revenue Service when in fact title had not passed from the defrauded investors to the debtor, and therefore to the trustee, the trustee could be held personally liable for his misapplication." In other words, the trustee is concerned about a possible personal liability to the defrauded investors should he turn the assets over to the IRS.

■ A trustee in bankruptcy has the duty to act in the best interest of the bankrupt's estate. *Matter of Washington Group, Inc.*, 476 F.Supp. 246, 250 (M.D.N.C.1979), *aff'd sub nom. Johnston v. Gilbert*, 636 F.2d 1213 (4th Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3084, 69 L.Ed.2d 954 (1981). An integral part of the trustee's duty is to collect, preserve and liquidate the assets of the estate, thereby maximizing the value of the estate for a proper distribution to creditors. *Commodity Futures Trading Comm. v. Weintraub*, —— U.S. ——, 105 S.Ct. 1986, 85 L.Ed.2d 372, 12 BCD 1247, 1251 (1985); 1 *Collier on Bankruptcy* ¶ 2.34, 241–42 (14th ed. 1974).

■ In some instances, trustees have been held liable either in their official capacity or personally for damages which have resulted from the trustee's failure to perform his duties properly. *See e.g., In re Kuhn Brothers*, 234 Fed. 277, 281 (7th

Cir.), *cert denied*, 242 U.S. 629, 37 S.Ct. 14, 61 L.Ed. 536 (1916); *In re P–R Holding Corporation*, 84 F.Supp. 467, 471 (S.D.N.Y. 1949); *In re Webster Loose Leaf Filing Co.*, 252 Fed. 959, 959–60 (D.N.J.1918). A trustee may be held personally liable, however, only if he "acts willfully and deliberately in violation of his fiduciary duties...." *Sherr v. Winkler*, 552 F.2d 1367, 3 BCD 193, 198 (10th Cir.1977). Furthermore, a trustee may be held liable in his official capacity only "if he fails to exercise that degree of care required of an ordinarily prudent person serving in such capacity." *Id.*

The Supreme Court of the United States has recognized that trustees in bankruptcy may find themselves in a difficult position as they attempt to deal with the various competing interests involved in a bankruptcy proceeding. *See Mosser v. Darrow*, 341 U.S. 267, 274, 71 S.Ct. 680, 683, 95 L.Ed. 927 (1951). Although the *Mosser* case was a reorganization proceeding, rather than a liquidation proceeding, the Court's discussion is applicable equally to both situations. In the opinion by Justice Robert H. Jackson, the *Mosser* Court recognized that there are ways by which a trustee may protect himself against personal liability. *Id.* at 273–74, 71 S.Ct. at 683. The Court noted that "[t]he practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment." *Id.*

As discussed earlier, the trustee has taken two procedurally different, but substantively similar, actions in response to the IRS' proofs of claim. The trustee's objection to proofs of claim and the complaint for declaratory judgment are similar attempts to procure guidance from this Court concerning the dilemma which the trustee perceives he is in. The decision before the Court is somewhat complex because of the unusual procedural positions of the parties in this case. In both matters before the Court, the trustee is seeking a ruling that the tax claims filed by the United States and the Commonwealth of Virginia are dis-

allowed. The keystone of the trustee's position, however, is that under state common law the assets of the estate are held in constructive trust for the defrauded investors. Whether an estate contains any assets is totally irrelevant as to the propriety and allowability of a claim filed against the estate. The only, and very obvious, effect of a no-asset liquidation proceeding is that no disbursement is made to any creditor.

Furthermore, the typical constructive trust situation encompasses an action by the injured party alleging fraud against the party in whose hands rests property the loss of which constitutes plaintiff's injury. In the case *sub judice*, a fraud was perpetrated by the bankrupt against several investors. The investors are the individuals who sustained losses and injuries due to the bankrupt's actions. Furthermore, the bankrupt was the party in whose hands the property, invested funds, rested. Upon the adjudication of Johnson as a bankrupt, the property was placed in the hands of the trustee. Thus, one would envision a classic constructive trust action by the defrauded investors against the trustee.

The instant case, however, features allegations of a constructive trust being made by the trustee against the IRS. Because of the scheme of distribution contained in section 64 of the Bankruptcy Act, the IRS' claims follow administrative expenses but precede the claims filed by the investors. Apparently, after some research into the question, the trustee's position is that the assets of the estate are held in trust for the investors. Thus, as indicated previously, the trustee is concerned about a possible liability to the investors should the assets be paid over to the taxing authorities.

■ A court must accept as true all material allegations of a complaint and construe the complaint in favor of the complainant when a motion to dismiss for lack of standing is filed. *Warth v. Seldin*, 422 U.S. at 501–02, 95 S.Ct. at 2206–07. Equally clear, however, is that a court is not bound only to the pleadings of the parties but may "inquire into the facts as they

really exist" if the court believes that its jurisdiction has not been invoked properly. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 184, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936) *citing Wetmore v. Rymer*, 169 U.S. 115, 120, 18 S.Ct. 293, 295, 42 L.Ed. 682 (1898). In the instant case, the Court must determine whether the trustee's apprehension of possible liability to the investor-claimants satisfies the "personal stake" prerequisite for invocation of federal jurisdiction.

■ The trustee cites as support for its position a decision by the United States District Court for the Western District of Missouri. *Reliance Insurance Co. v. Brown*, 40 B.R. 214 (W.D.Mo.1984). As demonstrated below, the *Reliance* case is similar to the case at bar. The *Reliance* litigation featured an assertion that certain assets of a bankruptcy estate were held in constructive trust for individuals defrauded by the debtor in an insurance scheme. *Id.* at 215. The constructive trust action was brought by Reliance Insurance Company ("Reliance"), a reinsurer of an underwriting agency to which the debtor belonged. The defendant in the litigation was the bankruptcy trustee. *Id.* The IRS, which had filed proofs of claim for unpaid pre-petition taxes, argued that Reliance had no standing to bring an action alleging the existence of a constructive trust on behalf of other individuals defrauded by the debtor. *Id.*

The bankruptcy court held that the funds had been received by the trustee subject to a constructive trust for the benefit of the insurance claimants. *Id.* at 216–17. The court also specifically found that Reliance had standing to bring the action in that any payment to the defrauded claimants would decrease the amount of Reliance's contingent liability to the same claimants. *Id.* at 217.

The District Court in *Reliance* affirmed the Bankruptcy Court's decision in all respects. *Id.* at 219. With respect to the *Reliance* court's review of the bankruptcy courts ruling as to Reliance's standing, the District Court stated:

Finally, the appellant argues that Reliance has no standing to bring an action to impose a constructive trust because Reliance has no claim to the trust funds. As the Bankruptcy Court observed, the question of standing involves whether the party invoking jurisdiction has a personal stake in the outcome of a controversy, and whether the dispute touches on the legal relations of parties having adverse legal interests. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The Bankruptcy Court found, and this Court agrees, that because the fund in question is not enough to satisfy all the existing insurance claimants in full, Reliance may ultimately be held liable to these claimants under its insurance policy with A/U. Reliance, therefore, has a "personal stake" in the outcome of this controversy in that it has a direct monetary interest in seeing that the fund is applied to satisfy the claims of the insurance claimants. Similarly, Reliance has an adverse legal interest as it desires to lessen its potential liability to the insurance claimants. This Court is in agreement with the Bankruptcy Court's assertion that to deny Reliance standing at this time could result in a situation where questions of great effect on Reliance's situation would be decided before Reliance's liability became an actual obligation. Accordingly, the Bankruptcy Court did not err in concluding that Reliance has standing to bring this action.

*Id.* at 218–19.

As a practical matter, "the facts as they really exist" indicate that the validity of comparing the insurance company's risk in *Reliance*, upon which its claim of standing is based, and the trustee's risk in the instant case is not comparable. In *Reliance*, the insurance company was an actual insurer of the underwriting agency to which the debtor belonged. Reliance was liable to the defrauded claimants and any payment to the claimants through the debtor's estate resulted in a direct decrease in liability to the insurance company. Furthermore, there can be no dispute that the *Reliance*

case featured a proper defendant in the trustee as the holder of the property subject to the trust. In the instant proceeding, however, the trustee's liability to the defrauded investors is totally distinguishable from that of the insurance company in *Reliance*. The standard necessary for a determination of liability on the trustee's part could only be met if the trustee failed to perform his duties properly. *In re Kuhn Brothers*, 234 F. 277, 281 (7th Cir.), *cert denied*, 242 U.S. 629, 37 S.Ct. 14, 61 L.Ed. 536 (1916). Any action by the trustee taken in proper reliance on a court order hardly would be in violation of his duties. Furthermore, in the instant case, neither party, the trustee nor the IRS, is a party in its proper procedural position. Certainly, the IRS as the defendant is not the holder of property alleged to be that of the investors but is merely another creditor of the estate. In light of the strict requirements, including standing, necessary under Article III for a finding of federal jurisdiction, this Court has no alternative but to grant the motion for dismissal.

Although the Court need not address the IRS' second basis for its motion to dismiss, a brief discussion would be appropriate. As its second basis for dismissal, the IRS argues that the jurisdictional authorities cited by the trustee do not support a finding of jurisdiction over the IRS. The bases of jurisdiction cited by the trustee are sections 1331, 1334 and 2201 of Title 28 of the United States Code ("the Code") and section 505 of Title 11 of the Code.

■ Initially, the IRS argues that it cannot be sued absent some express waiver of immunity. *See* 2 *Collier on Bankruptcy*, ¶ 106.01, 106–1 to 106–2 (15th ed. 1985). The IRS further asserts that none of the cited jurisdictional grounds contain such a waiver. Section 1331 of Title 28 of the Code is merely the general federal question jurisdictional statute. 28 U.S.C. § 1331. Section 1334 of Title 28 of the Code provides for federal court jurisdiction over bankruptcy matters. 28 U.S.C. § 1334. Neither of these two statutes support jurisdiction in this case as neither contain an

express waiver of immunity. *See Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1952); *Provenza v. Rinaudo*, 586 F.Supp. 1113, 1117 (D.Md. 1984). Section 2201 of Title 28 of the Code authorizes an action for a declaratory judgment before a federal court. 28 U.S.C. § 2201(a).

Under section 2201, a declaratory judgment with respect to federal taxes is exempted from coverage of the section with two exceptions. *Id.* One of those exceptions is a proceeding under section 505 of the Bankruptcy Reform Act of 1978 ("the Reform Act"). *Id.* A proceeding under section 505 is commenced to determine the amount of a debtor's tax liability. 11 U.S.C. § 505. Of course, because this case is a proceeding under the former Bankruptcy Act, section 505, also cited by the trustee as a source of jurisdiction, is not applicable. Furthermore, even though section 505 is based on section 2a(2A) of the Bankruptcy Act, section 2201 prohibited a declaratory judgment as to federal taxes until 1976 when the first exception, not relevant to the case *sub judice*, was added. A determination under section 505 was not authorized until 1978.

Although section 106 of the Reform Act specifically contains a waiver of governmental immunity arising out of the Government filing a proof of claim, no such waiver was contained in the Bankruptcy Act. Section 106, however, codified certain decisions which had permitted a bankruptcy court to determine the liability for or dischargeability of federal taxes even in instances in which the IRS had not filed a proof of claim. 124 Cong.Rec. H 11,091 (Sept. 28, 1978); S 17,407 (Oct. 6, 1978). The Ninth Circuit Court of Appeals ruling on this issue has held that based on section 2a(2A) of the Bankruptcy Act, a bankruptcy court has jurisdiction to determine the amount and the bankrupt's liability for federal taxes even when the IRS had failed to file a proof of claim. *Gwilliam v. United States*, 519 F.2d 407, 410 (9th Cir.1975). Thus, the *Gwilliam* case would stand as precedent for a finding of jurisdiction over

the IRS as to any claims to which objections have been filed based upon their merits.

There can be no doubt but that the trustee has standing to object to a proof of claim which has been filed out of time. *See* R.Bankr.P. 306(a). With certain enumerated exceptions, none of which are applicable in the case at bar, a claim had to have been filed within six months after the first date set for the first meeting of creditors. R.Bankr.P. 302(e). The first meeting of creditors under Chapter VII was held on April 1, 1975. The IRS claim for $1,515,-702.00 for tax year 1974 was filed on April 21, 1976 more than a year after that meeting.

Although the trustee does have standing to object to the IRS proof of claim, his objection cannot be upheld. The IRS timely filed its original proof of claim on October 11, 1974 for unpaid income tax for 1972. An amended claim was filed on December 10, 1974, updating the 1972 liability and adding a claim for 1973 income tax. A third claim for unpaid income tax for 1974, styled as a supplemental claim to the first two claims, was filed on April 21, 1976. All three claims covering tax years 1972–74 originate out of the same course of conduct and activity of the bankrupt. Furthermore, the latter two claims amplify the IRS claim asserted in the original timely-filed proof of claim. In such circumstances, established case law has determined that such proofs of claim will not be disallowed because of the untimeliness of their filing. *Menick v. Hoffman*, 205 F.2d 365, 368 (9th Cir.1953); *In re Diversified Brokers Co., Inc.*, 355 F.Supp. 76, 78 (E.D.Mo.), *aff'd*, 487 F.2d 355 (8th Cir.1973); *In re Western Trading Co.*, 340 F.Supp. 1130, 1133 (D.Nev.1972); *Matter of Saxe*, 14 B.R. 161, 164 (Bankr.S.D.N.Y.1981) and cases cited therein; *see In re Franciscan Vineyards, Inc.*, 597 F.2d 181, 183 (9th Cir.1979) (per curiam), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980).

Based on the objection to the proofs of claim, the claim of the Commonwealth of Virginia for $141,664.79 filed on September 3, 1976 is disallowed. In all other respects, however, the trustee's objections to the proofs of claim filed by the IRS are denied. Moreover, for the aforesaid reasons, the motion to dismiss filed by the IRS is granted.

An appropriate Order will enter.