**Betty GIBSON et al.**

v.

**Patricia HARRIS, etc., et al.**

**Peggy WILSON et al.**

v.

**Patricia HARRIS, etc., et al.**

**Civ. A. Nos. 77–0488–R, 77–0489–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 30, 1977.

Gerald Zerkin and Kenneth R. Erickson, Jr., Neighborhood Legal Aid, Richmond, Va., for plaintiffs.

Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., and Hiram Eastland, Jr., for Patricia Harris.

A. J. T. Byrne, and T. S. Ellis, III, Lawrence B. Cann, III, Hunton & Williams, Richmond, Va., for Ruffin Road Associates and Realty Industries, Inc.

Wayne O'Bryan, Richmond, Va., and Michael Banzhaf, Washington, D. C., for Nat. Corp. for Housing Partnerships and Nat. Housing Partnership.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs are tenants in two low income housing projects, Ruffin Road Apartments and Walmsley Terrace Apartments, both of which are operated and subsidized in accordance with § 236 of the National Housing Act, 12 U.S.C. § 1715z–1. Defendants are Patricia Harris, Secretary of the Department of Housing and Urban Development ("HUD"), and the mortgagors and management agents of the two housing projects ("the landlords"). Plaintiffs seek class certification and a preliminary injunction against collection of certain portions of a rent increase which has been approved by HUD and is scheduled to take effect commencing October 1, 1977.

Jurisdiction of the controversy stems from 28 U.S.C. § 1331. For the reasons hereinafter stated, the Court is of the view that this is an appropriate case for class certification, and that the members of the

class are entitled at this stage of the proceedings to injunctive relief.

The basis of this controversy is HUD's policy regarding the "operating subsidy" provisions of § 236 of the National Housing Act, 12 U.S.C. § 1715z–1(f)(3) & (g).

In 1974, Congress added the operating subsidy provisions to § 236 for the purpose of ensuring that rising utilities costs and local property taxes would not drive rents above 30% of adjusted gross income for any tenant living in a housing project subsidized under § 236. HUD, however, has interpreted the operating subsidy provisions as wholly discretionary, and in the exercise of that discretion has refused to implement operating subsidies except on a case-by-case basis when directed to do so by judicial decree. Frustrated by HUD's policy, tenants in § 236 projects throughout the country instituted a national class action against HUD in 1976 in the United States District Court for the District of Columbia. The national class was awarded an injunction ordering HUD to implement the operating subsidy program on a nationwide basis retroactive to February 18, 1975, but the district court's order was stayed by the Supreme Court. *Underwood v. Hills*, 414 F.Supp. 526 (D.D. C.), *appeal pending* (D.C.Cir.), *order stayed*, 429 U.S. 892, 97 L.Ed.2d 250, 50 L.Ed.2d 175 (1976). Since issuing that stay, the Supreme Court has granted *certiorari* in two other cases which heard challenges to HUD's policy reference the § 236 operating subsidy. See *Abrams v. Hills*, 547 F.2d 1062 (9th Cir. 1976), *cert. granted sub nom. Harris v. Abrams*, 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977); *Ross v. Community Services, Inc.*, 396 F.Supp. 278, *subsequent opinion* 405 F.Supp. 831 (D.Md.1975), *aff'd without published opinion*, 544 F.2d 514 (4th Cir. 1976), *cert. granted sub nom. Harris v. Ross,* 431 U.S. 928, 97 S.Ct. 2630, 53 L.Ed.2d 243 (1977). The issue of HUD's obligations under § 236 is now pending before the highest court of the land. In the meantime, HUD, though continuing to approve new rent increases for § 236 projects, refuses to implement the § 236 operating subsidy program.

Plaintiffs in this court are among those for whom new rent increases have been approved but the § 236 operating subsidy has been denied. So ensnared, plaintiffs pray for an injunction, going to that portion of the forthcoming rent increase at Ruffin Road Apartments and Walmsley Terrace Apartments which may eventually be covered by a § 236 operating subsidy. Succinctly stated, plaintiffs seek to enjoin collection of that portion of the approved rent increase which is attributable to increased costs of utilities and local property taxes and which will raise any tenant's rent above 30% of his or her adjusted gross income.

■ Initially, the Court must focus upon several threshold challenges to plaintiffs' suit. First, the landlords contend that plaintiffs do not qualify as an appropriate class under Federal Rule of Civil Procedure 23. In the Court's view, that contention must fail. Plaintiffs have conceded that the class is not "all tenants," as asserted in the original complaint, but rather only those tenants who are now paying or will be paying more than 30% of their adjusted gross income for rent. The primary controversy remaining is whether there are a sufficient number of these "30%" tenants to satisfy Rule 23's numerosity requirement. The Court is satisfied from the pleadings and evidence adduced that at least 60 and perhaps in excess of 130 tenants are in the "30%" class. The Court therefore concludes that the class is so numerous that joinder of all members of the class would be impracticable. Since all other requirements of Rule 23 are satisfied, a class certification will issue.

■ Second, HUD contends that plaintiffs here are members of the national class represented in *Underwood v. Hills, supra*, and that the *Underwood* litigation is consequently *res judicata* as to the instant litigation. On this basis, HUD moves for dismissal, summary judgment, or for stay of all proceedings pending the Supreme Court's decision in *Harris v. Abrams, supra,* and *Harris v. Ross, supra.* In the Court's view, this position is well taken. Plaintiffs are members of the national class in *Under-*

*wood.* All issues involving the statutory construction of § 236 or of HUD's policies or procedures thereunder were litigated or could have been litigated in the *Underwood* action. The *Underwood* litigation is thus *res judicata* for all disputes between the instant plaintiffs and HUD, and the Court will stay all proceedings in this cause between the plaintiffs and HUD.

The *Underwood* litigation is not *res judicata*, however, between plaintiffs and the landlords. The landlords were not parties to the *Underwood* suit. Moreover, the issue of a preliminary injunction against the landlords was not and could not have been litigated in *Underwood.* The plaintiffs in *Underwood* represented tenants in more than 3,600 low income housing projects throughout the nation. It would not have been possible for the *Underwood* Court to weigh and balance the hardships of all plaintiffs and their respective landlords, as it would have been required to do in deciding a motion for preliminary injunction. *See Haas v. Harris,* 436 F.Supp. 279 (D.R.I. 1977) (Pettine, C. J.). Accordingly, as neither the parties nor the issues here duplicate those in *Underwood,* it would be inappropriate for the Court to stay proceedings in the instant case between plaintiffs and the landlord defendants.

■ Finally, the landlords cite *Ross v. Community Services, Inc., supra,* for the proposition that this Court is without authority to enjoin rent increases properly approved by HUD. It is accurate to state that *Ross* found no statutory authority to *rescind* a duly approved rent increase, 396 F.Supp. at 282, but plaintiffs in the instant case are not praying that this Court rescind the approved increase or any part of it. In the present litigation the sole issue is whether the landlords or the tenants should bear the burden, pending the Supreme Court's decision in *Harris v. Abrams* and *Harris v. Ross,* of that portion of the rent increase which may be covered by a § 236 operating subsidy. This issue was not confronted in *Ross* because at the time *Ross* was decided the Supreme Court had not yet stayed the order in *Underwood.* The *Ross*

court was therefore able to order HUD to implement a § 236 operating subsidy program on behalf of the *Ross* plaintiffs. Because of the intervening *Underwood* stay, however, this Court is barred by the principles of *res judicata* from directing HUD to implement the operating subsidy program. The instant litigation thus assumes a significantly different posture from that in *Ross.* The issues in *Ross* centered on statutory construction; the instant issue centers on the classical equitable considerations for issuance of a preliminary injunction. The *Ross* case is on point to the extent that it permitted the landlords to collect that portion of the rent increase clearly not covered under § 236, see 396 F.Supp. at 287. Beyond that, in the Court's view, *Ross* is not controlling.

Having disposed of the threshold challenges to the instant suit, the Court now turns to the merits of the plaintiffs' motion for preliminary injunction.

■ In exercising its discretion concerning the issuance of a preliminary injunction, the Court is guided by the recent decision of the United States Court of Appeals for the Fourth Circuit in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.,* 550 F.2d 189 (4th Cir. 1977). The Court of Appeals for the Fourth Circuit stated that the "first step" in considering a motion for a preliminary injunction is for the Court to balance the likelihood of irreparable harm to the plaintiff against the likelihood of irreparable harm to the defendants. *Id.* at 195.

Viewing plaintiffs' situation, it appears to the Court that if the full amount of the approved increase is implemented as scheduled, a number of tenants may be evicted because of their inability to pay the increased rent. Other tenants, faced with eviction, may be forced to cut back on bare necessities of life in order to meet the rent increase. Both of these conjectures have a statutory basis. Congress has itself declared, by enacting the operating subsidy provisions of § 236, that 30% of adjusted gross income is a danger level beyond which rents should not be permitted to rise. The

Court therefore concludes that there is substantial likelihood of irreparable harm to plaintiffs if they are required to pay the full amount of the rent increase as it is now scheduled to take effect.

The landlords, in contrast, will apparently suffer little harm if an injunction is granted. Plaintiffs have calculated that the amounts which would be subject to injunction would be only $2,226 per month at Walmsley Terrace Apartments and $2,135 per month at Ruffin Road Apartments. The Court is skeptical that a temporary injunction against collection of these relatively small amounts will move the mortgage holders to foreclose on these multi-million dollar subjects, particularly since the amounts subject to the injunction will be paid to the landlords in the form of § 236 operating subsidy if the Supreme Court affirms this Circuit's decision in *Ross v. Community Services, Inc.*[1]

In short, the Court concludes that there is no immediate substantial likelihood of irreparable harm to the landlords if the Court grants the limited injunction which plaintiffs seek. The balance-of-hardship test therefore weighs in favor of granting the injunction.

That of course is not the end of the inquiry. The Court must also assess the probability that plaintiffs will ultimately succeed on the merits. In this regard, the Fourth Circuit has stated that the decision to grant or deny a preliminary injunction depends upon a "flexible interplay" of all the factors considered. 550 F.2d at 196. Thus, "[t]he importance of probability of success increases as the probability of irreparable injury diminishes." *Id.* at 195. Conversely, "even a 'possible' irreparable injury has been held to suffice if there is a strong probability of success on the merits." *Id.* at 196. In the instant case, plaintiffs have demonstrated both a strong likelihood of irreparable injury and a high probability of success on the merits. Indeed, the lower federal courts are thus far unanimous on the underlying statutory issue. Every court that has analyzed § 236 has concluded that HUD has a statutory duty to implement the operating subsidy program. The landlords have not satisfied this Court that the Supreme Court is likely to reach a contrary result. The high probability that plaintiffs will ultimately succeed on the merits, coupled with the substantial likelihood that plaintiffs will suffer irreparable harm if injunctive relief is denied, weighs heavily in favor of issuing an injunction.

Finally, the Court must consider the public interest. The presence of a federal statute providing for subsidy payments if rents climb above 30% of any tenant's adjusted gross income gives rise to the conclusion that the public interest lies in preventing eviction of low income tenants by reason of rents in excess of the 30% figure. Additionally, in light of plaintiffs' success on the merits in the nationwide class action

---

1. At oral argument, counsel for HUD took the position that § 236 operating subsidy payments could not be made retroactively if an injunction issued here, because no tenant would actually have "paid" in excess of 30% of his or her adjusted gross income for rent. Although the issue of retroactivity under § 236 was not litigated in these proceedings, the Court must express its firm belief that the position taken by counsel for HUD is incorrect. In the first place, the order in *Underwood v. Hills, supra,* is retroactive to February 18, 1975. See 414 F.Supp. at 531. If the Supreme Court agrees with the lower courts that § 236 confers a mandatory duty on HUD to pay out § 236 operating subsidies, then the *Underwood* order will provide for retroactive § 236 payments to the landlords here. Since HUD argues that the plaintiffs in the instant action are members of the national class certified in *Underwood*, HUD can scarcely argue that plaintiffs will not be covered by the *Underwood* order if that order is reinstated.

More important, § 236 itself contradicts HUD's cavalier interpretation. The statute authorizes the Secretary to pay directly to the project owner operating subsidies up to the "amount required to *maintain* the basic rentals of any units at levels *not in excess* of 30 per centum" of any tenant's adjusted gross income. 12 U.S.C. § 1715z–1(f)(3) (emphasis added). Since the object of the payments is to keep rentals below 30% of adjusted gross income, it would be absurd to argue that tenants must pay above 30% of their incomes for rent in order to trigger the statute. The Court is therefore confident that an injunction here will not jeopardize the landlords' right to retroactive payments under § 236.

brought in *Underwood*, the public interest in preserving the status quo pending resolution by the Supreme Court of HUD's statutory obligations under § 236 is best served by granting the injunction prayed for and thus preventing a change in the relationship between the parties.

As all of the factors considered weigh in favor of the plaintiffs, the motion for a limited preliminary injunction will be granted.[2]

An appropriate order will issue.

### ORDER

For the reasons stated in the memorandum of the Court this day filed, and deeming it proper so to do, it is ADJUDGED and ORDERED that:

(1) The "Federal defendant's motion to stay all proceedings as to them is granted, but the motion to stay is denied as to all the other defendants.

(2) The Federal defendant's motion to dismiss, or, in the alternative, for summary judgment, is denied.

(3) The private defendants' motion to oppose class certification is denied.

(4) The Court certifies as an appropriate class under Federal Rule of Civil Procedure 23 all tenants at Ruffin Road Apartments and Walmsley Terrace Apartments who are now paying, or will be subjected to pay under the approved rent increase schedule, in excess of 30% of their adjusted gross income for rent, due to increased utilities costs and local property taxes.

(5) The plaintiffs' motion for preliminary injunction against collection of that portion of the rent increases attributable to increased utilities costs and local property taxes which is causing or will cause any tenant to pay in excess of 30% of his or her adjusted gross income for rent is granted; and the said defendants are so enjoined from collecting same from members of the class heretofore certified. Nothing herein is to be construed as precluding collection

from the plaintiff class of all other portions of the approved rent increase, as it takes effect.

Let the Clerk send copies of this order and of the accompanying memorandum to all counsel of record.

---

2. The Court notes that *Haas v. Harris, supra*, and *Lefort v. Hills*, No. 76–0286 (D.R.I. Nov. 19, 1976) are fully in accord with the Court's ruling.