80 B.R. 791 (1987)
In the Matter of Robert D. JOHNSON, Bankrupt. (Two cases)
Lenora Johnson BROWN and Edmund G. Harrison and Bert B. Barnes and Kate Barnes and John E. Barnes and W.T. Barnes, Esquire, Plaintiffs
v.
Bruce GOLDSTEIN, Trustee in Bankruptcy, Defendant
and
United States of America, Intervenor-Defendant.
Jack O. FRIEDMAN, Plaintiff,
v.
Bruce GOLDSTEIN, Trustee in Bankruptcy, Defendant,
and
United States of America, Invervenor-Defendant.
Bankruptcy No. 74-316-A.
United States Bankruptcy Court, E.D. Virginia, Alexandria Division.
December 21, 1987.
*792 Stephen Leach, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., for Bruce Goldstein, Trustee in Bankruptcy.
Bradley G. McDonald, John F. Karl, Jr., McDonald & Karl, Washington, D.C. and Philip Kellogg, Kellogg, Williams & Lyons, Washington, D.C. and David Ross Rosenfeld, Rosenfeld & Wohltman, P.C., Alexandria, Va., for W.T. Barnes.
Jack O. Friedman, Charleston, W. Va., pro se.
Robert O. Gordon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

MEMORANDUM OPINION
MARTIN V.B. BOSTETTER, Jr., Chief Judge.
We are once again called upon to make a determination in connection with the fraudulent pyramid investment scheme of bankrupt Robert D. Johnson, previously described by this Court in In re Johnson, 55 B.R. 800 (Bankr.E.D.Va.1985). The issue *793 here arises upon cross motions for summary judgment. One such motion was filed by the plaintiffs, defrauded investors, who have also filed a motion for certification of the matter as a class action under Federal Rule of Civil Procedure 23, and the other by the Internal Revenue Service ("IRS" or "the government"), which has intervened as a defendant.[1] The complaint asserts that funds presently held by the Trustee are not part of the bankruptcy estate and should be returned to the plaintiffs, as representatives of the proposed class. The plaintiffs put forward two related theories in support of their claim, the first asserting that the debtor and, consequently, the trustee, holds the swindled funds subject to a constructive trust in favor of investors. The plaintiffs base their second theory on the principles of common law governing title to the property obtained by fraud. It is the plaintiffs' contention that because Johnson never acquired title to the swindled investments, title could not vest in the trustee. They assert, therefore, that the trustee possesses no power under the Bankruptcy Act to distribute the funds, so the funds should be returned to the plaintiffs for distribution to the class outside of bankruptcy. In its defense to this claim, the government asserts that the relevant statute of limitations bars the plaintiffs' complaint. Furthermore, the government argues that, even if the complaint is not barred, only funds traceable from an individual investor into the estate can qualify as assets that do not pass to the trustee and that, since none of the swindled investors is able to trace his or her individual investment, all funds held by the trustee must properly be administered in bankruptcy.
The threshold issue for resolution by this Court is the government's assertion in its motion for summary judgment that the complaint is barred by the statute of limitations codified at section 8.01-243(B) of the Virginia Code, which states, in pertinent part:
Every action for injury to property . . . shall be brought within five years next after the cause of action shall have accrued.
Va. Code § 8.01-243(B) (1984). The applicability of this statute to cases asserting a constructive trust is a settled matter of law in Virginia. See White v. Federal Deposit Insurance Corp., 122 F.2d 770, 744 (4th Cir.1941) (Virginia case law cited and summarized). The government notes that, under section 8.01-249(1) of the Code of Virginia, a cause of action for fraud is deemed to have accrued at the time the fraud is discovered or, by exercise of due diligence, ought to have been discovered. Va. Code § 8.01-249(1) (1984). The government concludes that the date of the involuntary petition in bankruptcy is the last possible date that the Court may find the fraud to have accrued, in that the petition operated as a general notice of the fraudulent pyramid scheme orchestrated by the bankrupt, and thus the complaint is time-barred.
The plaintiffs counter with section 11(d) of the Bankruptcy Act as the applicable statute of limitations:
Suits shall not be brought against a person who has acted as a receiver or trustee of a bankrupt estate, upon any matter arising in connection with the administration thereof, subsequent to two years after the estate has been closed.
11 U.S.C. § 29 (repealed 1978). On its face, section 11(d) appears to include actions to reclaim property in the possession of the trustee but not within the estate of the bankrupt, because reclamation actions are matters "arising in connection with the administration" of the bankruptcy estate. The government, however, urges a narrow construction of section 11(d), suggesting *794 that the section applies only to actions brought against the trustee personally for malfeasance in carrying out his statutory duty, asserting that any other interpretation permits the initiation of disputes over substantive bankruptcy matters well after the closing of the bankruptcy estate.
We find the statutory language of section 11(d) sufficiently broad to cover both the action presently at bar and those asserting personal liability on the part of the trustee. We cannot accept, therefore, the government's position that the applicability of the section to the latter actions forecloses any application to the former.
In its original form, section 11(d) governed suits initiated by and against the trustee or receiver:
d. Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed.
Section 11(d) of the Bankruptcy Act of 1898. In 1938, Congress limited section 11(d) to suits against a trustee, clarified the scope of the section to "any matter arising in connection with the administration" of the estate, and drafted section 11(e) governing suits initiated by the trustee. The enactment of section 11(e) significantly curtailed the time period within which the trustee might press claims held within the bankruptcy estate to two years after the date of adjudication, rather than two years after the estate was closed. See 14 Collier on Bankruptcy § 11.01 (1978).
We find this Congressional amendment of the section instructive for the task of statutory interpretation before us. Particularly notable for our purposes is the failure of Congress to alter the time period within which plaintiffs may assert claims against the trustee. In view of the revision of the time limitation for actions covered by section 11(e), we must conclude that Congress was fully cognizant of the broad range of litigation permissible under section 11(d). Nevertheless, Congress did not alter the statute as it applied to suits brought against a trustee except to explicitly require a connection with the administration of the estate. The statutory language of this limitation clearly contemplates actions against the trustee that involve the merits of the bankruptcy.
The case cited by the IRS, In re Schreiber, 23 F.2d 428 (2d Cir.1928), poses no bar to our ruling. After granting the debtor in Schreiber a discharge, the court closed his bankruptcy case. More than three years later, the court granted ex parte a creditor's petition to reopen the estate in order to administer assets discovered subsequent to the closing of the case. The debtor moved to vacate the order reopening the case, asserting that the two-year limitation contained in section 11(d) constrained the court's exercise of its power to reopen cases not fully administered. The United States Court of Appeals for the Second Circuit rejected the debtor's argument, finding that section 11(d) had no bearing on the court's power to reopen a case improvidently closed.
The government cites the Second Circuit's opinion in Schreiber in support of the proposition that actions affecting the merits of the bankruptcy need be preceded by an order reopening the case, if the case is closed. The IRS concludes that because section 11(d) contemplates causes of action filed after the closing of the bankruptcy case, it cannot apply to any action involving substantive issues affecting the bankrupt or his estate.
At the outset, we note that the Schreiber court considered the version of section 11(d) enacted in 1898, and was thus without the benefit of the explanatory phrase "upon any matter arising in connection with the administration [of a bankrupt estate]". Section 11(d) (emphasis added). Collier's has characterized the inclusion of this phrase in the 1938 revision of section 11(d) as a "clarifi[cation of] the application of the subdivision," a description with which we concur. The section 11(d) applicable to this case, then, differs from that considered by the Schreiber court by virtue of the section's explicit description of the range of cases it governs.
We concur with the government's position noting the implication that, under proper practice, a closed case must be reopened *795 in order to address matters affecting the administration of the bankruptcy estate. However, we see no conflict between this procedure and the time limitation codified in section 11(d). The Schreiber court explicitly noted that compliance with procedural propriety governing reopening of the case did not settle, or even touch upon, the two-year limitation contained in section 11(d):
The notion which underlies the bankrupt's argument is really that section 11(d) bars any proceeding which the trustee hereafter to be elected may bring to compel the bankrupt to account, and therefore there is no unadministered asset, without which the reopening of an estate is not only futile, but unauthorized. It would seem to be a sufficient answer to reply that the defense of the 2-year limitation should be raised in the proceeding which the trustee may hereafter bring, rather than by motion to vacate the order reopening the estate.
23 F.2d 428, 429-30.[2] We find nothing in the Schreiber opinion that compels or even suggests the conclusion that section 11(d) applies only to personal actions against the trustee. Modifications of the section undertaken since the Schreiber opinion, as well as that court's suggestion that the limitations defense be raised in response to subsequent action by the trustee, reinforce the conclusion that the section is not so limited.
The government raises a second argument to rebut the plaintiffs' citation of section 11(d) as the applicable limitations period. Pointing to the plaintiffs' assertion that a constructive trust arose at the time each investor turned investment funds over to the bankrupt, the government contends that the complaint does not arise in connection with the administration of the bankrupt estate. Because the events alleged to give rise to a constructive trust ocurred before the involuntary petition was filed, the IRS argues, the cause of action alleged in the complaint "arose" long before any contemplation of a bankruptcy.
The government's argument is devoid of merit. Nothing could be more closely connected to the administration of a bankruptcy estate than a dispute over the assets available for distribution to creditors. The suit at bar, by alleging that funds held by the trustee are not part of the bankrupt estate, challenges the trustee's power to administer the same. It is self-evident that the matter at bar is a matter "arising in connection with the administration of" the estate of Robert D. Johnson. 11 U.S.C. § 29.
The plaintiffs correctly note that under the accepted interpretation of section 11(d), any claim on which the statute of limitations had not run at the time of the filing of the petition is governed thereafter by the applicable limitation provision of the Bankruptcy Act. See 9 Am.Jur.2d Bankruptcy § 1161 at 864. It is undisputed that the Virginia statute of limitations posed no bar to the plaintiffs' claims when the petition was filed. Consequently, we find that the complaint before the Court is timely.
Having decided that section 11(d) is the applicable statute of limitation and that the plaintiffs' claims are not barred thereby, this Court must next determine whether it is proper for the plaintiffs to maintain a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure[3].
Fed.R.Civ.P. 23(a) sets out four prerequisites to maintaining a class action:
(1) the class must be so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.
In addition to the above requirements, the case also must meet at least one of the *796 three alternative provisions of subdivision (b) of Rule 23, cited below. 7A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1759. The plaintiffs in this case seek Rule 23 certification under subdivisions (b)(1)(B), (b)(2), and (b)(3), although they urge that certification under (b)(1)(B) would be most appropriate under the circumstances.
This case easily meets the "numerosity" requirement of 23(a)(1): over two hundred persons or entities swindled by Johnson have filed proofs of claim, and the plaintiffs propose to include these victims as well as those who did not file as members of the class. Joinder of all parties need only be impractible, not impossible. 3B J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 23.05[3], at 23-156 (2d ed. 1987). Courts in this district have certified classes composed of at least 46 members, Holsey v. Armour & Co., 743 F.2d 199 (4th Cir.1984), cert. denied 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985); sixty members Gibson v. Harris, 438 F.Supp. 487 (E.D.Va.1977); and seventy-four members, Brady v. Thurston Motor Lines, 726 F.2d 136 (4th Cir.1984), cert. denied, 469 U.S. 827, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984). The sheer volume of parties as well as their geographic diversity supports the conclusion that the class is sufficiently numerous to support certification.
The second prerequisite to maintaining a class action is likewise easily met. The actions filed contain several questions of fact and law common to the class. These questions include, but are not limited to, the following: (1) whether assets being held by the trustee belong to the bankrupt Johnson or to the members of the class; (2) whether a constructive trust should be imposed on the assets held by the trustee for the benefit of the members of the class; (3) whether the government failed to file its claim timely and, if so, does such failure bar the claim as a matter of law; (4) whether the government is estopped from asserting that Johnson had taxable income from his fraud in the wine scheme because the government successfully and contrarily has asserted, in other litigation involving these investors, that investments in the wine scheme were loans to Johnson; and (5) whether Johnson had taxable income in a Ponzi (pyramid) scheme for tax years 1972, 1973 and 1974. A ruling against the trustee or the government in any of the above questions would result in a distribution to all members of the class, not just the individual asserting the claim. Thus, the "commonality" requirement is met.
The plaintiffs' claims are clearly typical of the class: like all members of the proposed class, the plaintiffs are defrauded investors in Johnson's pyramid scheme. The legal theories on which the plaintiffs rest their case are the same as those of all claimants. As such, the "typicality" requirement of 23(a)(3) is satisfied.
The final prerequisite to class certification, "adequacy of representation", also is evident in this case. Adequacy of representation has two elements: (1) the quality of counsel; and (2) the absence of interests adverse to the class. In re Watts, 76 B.R. 390, 400 (Bankr.E.D.Pa.1987). The plaintiffs are represented by counsel who collectively have several decades of active litigation experience, including the representation of claimants in other complex and class action litigation. Contrary to the assertions of the government, the plaintiffs' claims are not adverse to the class. Rather, the plaintiffs propose a pro rata distribution among the class, less counsel fees, of any funds found not belonging to the estate. Furthermore, if the funds remain in the estate but the claims of the IRS are defeated, the claimants will again receive a pro rata distribution. It is well settled that when parties "simply assert a common, collective right against an interloper who threatens to interfere with their rights or merely seek to preserve a fund, even though it might not be sufficient to satisfy their individual claims, the class interests are not antagonistic for purposes of representing the class." 7A C. WRIGHT, A. MILLER & M. KANE, supra, § 1768 at 358, and the cases cited therein. The government asserts that because each investor must trace his or her individual funds into the estate, the investors therefore *797 are in an adversarial position that precludes class certification. If the Court were to accept such an argument, it would in effect preclude any class action in a case such as this. The government's argument is not persuasive because the potential adversarial stance of the creditors here does not exceed that which would exist in any class action of this nature. Furthermore, the government's assertion as to the necessity of the tracing requirement in this case cannot withstand scrutiny as discussed hereafter. Instead, the tracing issue is yet another question of law common to members of the class, further butressing the case for class certification.
Since the four prerequisites of Rule 23(a) are satisfied, the Court must next determine whether the additional requirement of Rule 23(b) also is met. Fed.R.Civ.P. Rule 23(b) provides:
(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
The plaintiffs contend the case should be certified under subsections (b)(1)(B), (b)(2), and (b)(3).
Rule 23(b)(1)(B) describes the situation in which individual adjudications could affect adversely the rights of others not represented in the suit. The instant case is a classic example of such a situation: multiple claimants seeking satisfaction from a limited fund. That this description aptly characterizes many claimants before the bankruptcy court does not weigh against certification of this class, inasmuch as the four prerequisites to certification also are present. Note also that the plaintiffs are not attempting to make a class proof of claim, a practice regularly disallowed in the bankruptcy context. See, e.g., In re American Reserve Corporation, 71 B.R. 32 (N.D.Ill.1987), and the cases cited therein. The plaintiffs seek not to have their claims allowed but instead to assert the rights of the swindled investors to the funds held by the trustee. Accordingly, this Court finds that certification under Rule 23(b)(1)(B) is proper.
Because the trustee continues[4] to hold funds the plaintiffs claim are not property of the estate, the plaintiffs seek declaratory and injunctive relief for the class as a whole. For this reason, the Court finds the proposed class also should be certified under subsection (b)(2) of Rule 23, which addresses cases seeking injunctive and declaratory relief.
*798 While the proposed class also may be appropriately certified under subsection (b)(3), particularly since this section reiterates many of the Rule 23(a) prerequisites to certification, the Court declines to certify the class under this subsection. Persuasive authority holds that cases eligible for certification under subsection (b)(3) should be so certified only if certification under subsection (b)(1) or (b)(2) is inappropriate. See, e.g., Kyriazi v. Western Electric Company, 647 F.2d 388 (3d Cir.1981); Meyer v. Citizens and Southern National Bank, 106 F.R.D. 356 (D.Ga.1985). See generally 3B J. MOORE, supra, at ¶ 23.31[3]. Therefore, the proposed class will be certified only under Rule 23(b)(1)(B) and 23(b)(2).
The remaining issue facing the Court is whether either party is entitled to summary judgment. The plaintiffs have moved for partial summary judgment, asking the Court to rule that all funds held by the trustee belong solely to the plaintiffs, are held subject to a constructive trust imposed for the benefit of the plaintiffs, and are not subject to any lien of the government. The government contends, however, the funds cannot be subject to a constructive trust because each swindled investor must trace his or her individual contribution to assets in the estate, further contending that no individual is able to do so. Thus, by cross motion, the government also seeks summary judgment, asking the Court to rule that the funds held by the debtor are properly considered property of the estate and subject to distribution in accordance with statutory priority.
Summary judgment shall be rendered only if the case presents no genuine issue of material fact. In re Chantilly Construction Corp., 45 B.R. 297, 303 (Bkrtcy.E.D.Va.1985). Implicit in the government's argument for summary judgment is the underlying premise that individual tracing of each investor's investment into the funds held by the trustee is required before this Court can impose a constructive trust on these funds. In its memorandum, the government states as undisputed the fact that no individual investor can trace his or her contribution to the funds held by the trustee. In reply, the plaintiffs vehemently contest this assertion. Even assuming the individual tracing requirement arguendo, no evidence on the possibility of individual tracing has been presented. Therefore, a genuine issue of material fact is present, and summary judgment for the government must be denied.
In support of their motion for summary judgment, the plaintiffs rely primarily on the parties' stipulation of facts, which, inter alia, includes the following:
4. Johnson had income of approximately $20,000 in salary from the Vortex Corporation in 1972, $70,000 salary in 1973 and $34,166 in salary in 1974; and $5,000 per year from American Basic Corporation.
. . . . .
6. As of February 28, 1985, the trustee listed the assets remaining in Johnson's bankruptcy estate as $1,604,274.38 . . . [T]he assets contained in Johnson's bankruptcy estate are traceable directly to (a) actual investments by defrauded investors in the wine scheme; (b) the proceeds of Johnson's reinvestment of those funds; or (c) Johnson's salaries from Vortex Corporation and American Basic Corporation.
Thus, except for $129,166 in salaries plus an undetermined sum in interest, the parties have stipulated that all funds held by the trustee can be traced directly to fraudulently obtained investments or proceeds of these investments.
The law is well settled that property obtained by fraud of the bankrupt is not part of the bankrupt's estate. In re Teltronics, Ltd., 649 F.2d 1236 (7th Cir.1981); Nicklaus v. Bank of Russellville, 336 F.2d 144 (8th Cir.1964). While the parties have stipulated that the majority of the funds held by the trustee are traceable to the bankrupt Johnson's fraudulent scheme, the government nevertheless contends these funds are still property of the estate because this Court can impress a constructive trust only on funds traceable from individuals into the estate. Citing Cunningham v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. *799 873 (1924), as well as later cases following Cunningham, the government maintains that individual tracing is the indispensable element of the plaintiffs' case. Since no individual has traced his or her funds, the government considers inapplicable the rule placing fraudulently obtained property beyond the trustee's power.
Cunningham, the original "Ponzi" case, involved an attempt by the trustee of the estate of Charles Ponzi to recover as preferential certain payments made to earlier investors in Ponzi's scheme. The repaid investors defended on the ground that their fraudulent investments were held in a constructive trust for their benefit and, therefore, the returned funds were never property of the estate. The Court held that even if the payments were the return of fraudulently acquired investments, the defendants had failed to trace their initial investments to the funds returned and, therefore, the repayments were made from property of the estate and must be returned. Id. The Court imposed such a requirement because otherwise the earlier swindled investors would have received repayment to the exclusion of later victims of Ponzi's scheme. The Court considered such a result patently unfair, stating: "It is a case the circumstances of which strongly call for the principle that equality is equity, and this is the spirit of the bankruptcy law." 265 U.S. at 13, 44 S.Ct. at 427. All but one of the cases cited by the government in its memorandum to support its tracing requirement theory, including Cunningham, involve transfers to earlier defrauded parties at the expense of later victims. The remaining case involves not fraud but funds legitimately acquired by the debtor. The distinction between the cases on which the government relies and the case at bar is obvious: these plaintiffs seek not to prefer some fraud victims over others, but to preserve funds acquired by fraud for pro rata distribution to the victims of that fraud. Even Cunningham acknowledged that the tracing requirement was imposed to promote equality among defrauded parties and could be disregarded if equal treatment of the victims would result otherwise. Id.
Relying on the exception articulated in Cunningham, the Seventh Circuit abandoned the tracing rule in In re Teltronics, Ltd., 649 F.2d 1236 (7th Cir.1981). Similar to the instant case, Teltronics concerned a debtor who had perpetrated a fraudulent mail order scheme that collected about $1,700,000.00 for merchandise never delivered. Pursuant to the Illinois Consumer Fraud Act, a state-appointed receiver took possession of the debtor's checking accounts, which contained the remaining fruits of the fraud, about $836,000.00. After an involuntary petition in bankruptcy was filed against the debtor, the trustee filed a complaint against the receiver for the turnover of these funds. Citing Cunningham and its progeny, the trustee claimed the funds held by the receiver belonged to the estate because the fraud victims, for whose benefit the receiver held funds, were not able as individuals to trace payments into the account seized by the receiver. Similar to the case at bar, the entire fund was identified as fraudulently obtained, but no individual had identified particular funds. In view of the fact that the Illinois Consumer Fraud Act provided a mechanism for a pro rata return from the tainted fund to the swindled customers, the Seventh Circuit declined to impose the tracing requirement of Cunningham, instead ruling that the case could be harmonized with Cunningham by applying the policy behind the rule: equity. Id. at 1241.
While the government tries valiantly to convince this Court that the holding in Teltronics is an aberration, limited by the unusual state statute involved, we cannot agree. Teltronics disregarded the tracing requirement not only because the statute provided a mechanism for equitable distribution but also because the entire fund collectively was identifiable as fraudulently obtained, even if not traceable individually to fraud. Likewise, the fund held by the trustee herein, with the exception noted above, also is traceable to the fraudulent scheme of the debtor. The plaintiffs propose to distribute this fund pro rata to the victims of Johnson's nonexistent wine investments. Having certified this case as a *800 class action under Rule 23(b)(1)(B) and (b)(2), this Court finds the plaintiffs do have a method for the equitable treatment of all investors. Thus, consonant with Cunningham, individual tracing of funds into the estate is not required for the fund to retain its fraudulent character. Subject to this Court's approval of the proposed equitable distribution to be submitted by the Trustee in Bankruptcy, this Court holds that all funds in the bankrupt's estate, except for $129,166.00 in salaries and interest thereon, are property of the plaintiff class of investors and are not subject to any lien of the Internal Revenue Service. The plaintiffs' motion for summary judgment is granted.
An appropriate Order will issue.
NOTES
[1] In accordance with his long-standing position in this matter, Trustee in Bankruptcy Bruce Goldstein filed, in lieu of an answer to this complaint, a Memorandum stating his belief that the plaintiffs were the rightful owners of property presently held by the trustee and revealing his inability to defend, in good faith, this complaint. As the holder of priority claims totalling $4,088,425.38 for unpaid taxes on income earned in the taxable years 1972, 1973 and 1974, the Internal Revenue Service intervened to defend the action. The Service is undoubtedly a party in interest in this litigation, for it is undisputed that, even if the plaintiffs fail in this action, the funds held by the trustee are insufficient to satisfy the government's claims.
[2] The Schreiber court went on to find that assertion of the two-year limitation contained in section 11(d) would be futile, because the section was inapplicable to suits against the debtor. 23 F.2d at 430.
[3] Pursuant to Rule 723 under the Bankruptcy Act, the Federal Rule of Civil Procedure 23 applies to this case.
[4] See footnote 1 above.