KREN v. RUBIN.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—CONSTRUCTIVE TRUSTS.
     A suit to impose a constructive trust for an alleged breach of an agent's duty is a chancery case and facts are reviewed *de novo* by the Supreme Court.

2. SAME—CHANCERY CASES—FINDINGS OF FACT BY TRIAL JUDGE—CREDIBILITY OF WITNESSES.
     The Supreme Court gives deference to the findings of facts by a trial judge in a chancery case due to his opportunity to observe the witnesses and thereby judge their credibility.

3. TRUSTS—CONSTRUCTIVE TRUSTS—PRINCIPAL AND AGENT—PURCHASE OF REALTY—FRAUD—FINDINGS OF FACT BY TRIAL JUDGE.
     Trial judge's finding that defendant husband had acted as an

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 815.
[2] 3 Am Jur, Appeal and Error § 896 *et seq.*
[4-7] 49 Am Jur, Statute of Frauds §§ 151, 578 *et seq.;* 54 Am Jur, Trusts § 225 *et seq.*
[6, 7] 54 Am Jur, Trusts § 611.
[9] 54 Am Jur, Trusts § 581.
[10] 2 Am Jur, Agency § 299.

agent for the purchase of property and that by a violation of his trust he committed a fraud upon plaintiffs in that he purchased the entire property for less than he sold it to plaintiffs and then retained the rear 40 feet of it as he conveyed the front 100 feet to plaintiffs *held,* supported by record in suit to impose a constructive trust.

4. FRAUDS, STATUTE OF—PRINCIPAL AND AGENT—TRUSTS EX MALE-FICIO.

An oral agreement relative to defendant's agency in the purchase of real estate on behalf of plaintiffs was not void and unenforceable because contrary to the statute of frauds as that statute does not apply to trusts *ex maleficio,* such trusts arising by operation of law and not by agreement or intention (CL 1948, § 566.106).

5. SAME—PURPOSE OF STATUTE—EQUITY.

The statute of frauds is meant to prevent frauds and not to encourage them and a court of equity will not permit a person to shield himself behind the statute of frauds in order to perpetrate a fraud (CL 1948, § 566.106).

6. TRUSTS—CONSTRUCTIVE TRUSTS—PAROL EVIDENCE.

A constructive trust may be established by parol evidence.

7. SAME—PAROL EVIDENCE—STATUTE OF FRAUDS.

The statute of frauds does not bar proof of actual or constructive fraud in the sale of realty as parol evidence is admissible to establish a constructive trust even against a deed absolute on its face, if it would be a fraud to set up the form of the deed as conclusive (CL 1948, § 566.106).

8. PRINCIPAL AND AGENT—PAROL EVIDENCE—VARYING DESCRIPTION IN LAND CONTRACT.

Parol evidence was properly admitted to vary an unambiguous description in a land contract, where such evidence was offered to show that plaintiffs understood the land contract was in fulfillment of a defendant's agency obligation (CL 1948, § 566.106).

9. EQUITY—LACHES—CONSTRUCTIVE TRUSTS—PRINCIPAL AND AGENT.

Plaintiffs were not guilty of laches in commencing suit to impose a constructive trust to gain title to land not included within description of land contract and deed, where they commenced suit less than a month after discovering defendant's claimed breach of agency agreement for purchasing the land.

10. PRINCIPAL AND AGENT—FRAUD—COMMISSIONS.

An agent who has been guilty of fraud in the transaction of his principal's business forfeits his rights to a commission as such.

11. SAME—TITLE—ACCOUNTING.

An agent's duty to his principal forbids him from disputing the principal's right or title to property when called upon to account for property received by him on the principal's account.

12. EVIDENCE—ENTRY MADE IN USUAL COURSE OF BUSINESS—CONSTRUCTIVE TRUSTS.

Admission of cancelled check to defendant for payment of attorney fees incident to purchase of property by defendant for plaintiffs and offered in evidence as an entry made in the usual course of business was not prejudicial error in suit to impose a constructive trust upon such agent, where trial court did not allow recovery for the amount so paid (CL 1948, § 617.53).

Appeal from Wayne; O'Hara (Chester P.), J. Submitted October 6, 1953. (Docket No. 16, Calendar No. 45,497.) Decided November 27, 1953.

Bill by Cyril Kren and wife against Nathan Rubin and wife to establish a constructive trust on real estate and for accounting. Decree for plaintiffs. Defendants appeal. Affirmed.

*Thomas Giles Kavanagh, Jr.,* for plaintiffs.

*Schmier & Schmier (Sidney J. Karbel,* of counsel), for defendants.

SHARPE, J. This case involves the alleged breach of an agent's duty and the imposition of a constructive trust to prevent the agent from profiting by his fraud.

It is the claim of plaintiffs that in the year of 1940 they were leasing property from one Marcella Dudas, which consisted of a building and vacant land fronting on Scotten avenue in the city of

Detroit; that in said building they conducted a saloon and restaurant business; that defendant, Nathan Rubin, conducted a packing house in the immediate vicinity of plaintiffs' premises; that prior to March 1, 1943, the owner of the premises was desirous of repossessing herself of said premises; that said Marcella Dudas instituted eviction proceedings against plaintiffs; that defendant, Nathan Rubin, was aware of the strained relationship between plaintiffs and Marcella Dudas; that upon 1 occasion Nathan Rubin inquired of plaintiffs why they did not purchase the premises from Marcella Dudas, whereupon plaintiffs stated that because of the strained relations with Marcella Dudas they feared that she would not sell to them, whereupon defendant, Nathan Rubin, suggested that he would buy the premises for them; that Nathan Rubin discussed the matter with Marcella Dudas, and informed plaintiffs that he could purchase the premises for $8,500, whereupon plaintiffs gave him $500 in cash to make a down payment on said premises; that a few days later plaintiffs gave Nathan Rubin $1,500; that on March 11, 1943, Nathan Rubin took title to the premises in his own name; that on March 24, 1943, defendant, Nathan Rubin, offered to give plaintiffs a contract for the sale of the premises, which plaintiffs accepted, said contract purporting to convey the property which defendant, Nathan Rubin, had undertaken to purchase for them; that plaintiffs thereupon paid Nathan Rubin an additional $2,000 and received in return a contract setting forth a balance of $4,-500 payable in monthly installments of not less than $375; that in 1947 defendant, Nathan Rubin, applied to the board of zoning appeals for a permit to erect a structure on a part of the property that plaintiffs believed they were purchasing from defendants; that upon an examination of the contract, plaintiffs first learned that defendants only conveyed to plain-

tiffs the front 100 feet of the lots and retained for themselves the rear 40 feet.

Defendants filed an answer to plaintiffs' amended bill of complaint, and defendant, Nathan Rubin, admits that he acquired the property in question from Marcella Dudas under date of March 11, 1943; that on March 24, 1943, the defendants sold a part of the property purchased to plaintiffs on a land contract, and on September 8, 1943, they executed a warranty deed in which plaintiffs are the grantees. Defendant, Nathan Rubin, denies that he ever acted as an agent for plaintiffs, and that the description of the property in the land contract and warranty deed is the identical description of the property that plaintiffs purchased, and he further denies that he is guilty of any fraud or deceit in his dealings with plaintiffs.

The cause came on for trial, and each of the parties produced testimony in support of their claims. At the conclusion of the trial, the trial court filed an opinion, in which he stated:

"I cannot escape the final conclusion that Mr. Rubin did act in this case for and on behalf of these plaintiffs in procuring this property for them from Mrs. Dudas. I think when the case is analyzed and the pleadings are analyzed, there is no other conclusion that the court could come to. * * *

"I was not impressed with his testimony, and I certainly was not impressed with the testimony of Marcella Dudas. I thought she was evasive, and I didn't think she was telling the truth. She couldn't tell anything. She couldn't testify to anything except the purchase of this property about Christmas time. She had no recollection of anything else. She remembered that too vividly, in my opinion. * * *

"A very strong factor in this case, in my judgment, is a question of taxes. These people have continued on the tax rolls for the entire piece of property, and have paid the taxes during all this period of time,

no effort being made by the defendant to have any changes made in the tax roll, or to assume the taxes for the portion which he retained.

"I realize that they should have read their land contract. I don't know that they would have understood, had they read it. She says she doesn't understand legal language, and she had faith in him. The other transactions, like the deed which followed, and later transactions, apparently were taken off the description in the land contract. Certainly some lawyer or somebody thoroughly familiar with the real estate descriptions drafted that contract, and there isn't any question in my mind but what it was drafted by somebody representing Mr. Rubin, and I think he knows who it was and could tell me if he · wanted to. At least he collected the costs and what was termed 'attorney fees' at the time the sum of $109 was paid. There isn't any question but what he got this money. He hasn't explained what it was for to my satisfaction, and I am thoroughly convinced that he deliberately kept part of this property without advising these people. That being true, it follows that a fraud was committed at the time that he retained part of this property. He bought it on the 11th day of March. At least he concluded it on that day. He received the entire tract of 69 feet by 140, and then conveyed them 69 by 100 of these 3 lots. In so doing he violated his trust, and it comes within many rules that are laid down in *Stephenson* v. *Golden,* 279 Mich 710. It was his duty as the agent to turn over the entire property, and not only that, but he bought it for $8,000 and sold it at a profit of $500, getting $8,500 for it.

"I think they have established a constructive trust, and are entitled to the deed of the entire property and a return of the $500 that he profited in making this sale on the 24th of March."

On June 15, 1951, a decree was entered whereby defendants were required to convey to plaintiffs the

property in question and pay plaintiffs the sum of $500.

Defendants appeal and urge that plaintiffs failed to sustain the burden of proof that Nathan Rubin undertook to purchase the 40 feet of vacant property and then sell the same to plaintiffs. This is a chancery case and we review the facts *de novo*. We also give deference to the findings of facts by the trial judge due to his opportunity to observe the witnesses and thereby judge their credibility. The opinion filed in this case indicates that the trial judge did not give full credence to all of the testimony of some of the witnesses. We have carefully examined the record and conclude that the trial judge arrived at a correct appraisal of the evidence, and we affirm his findings of facts.

Defendants also urge that the statute of frauds* is a complete defense to plaintiffs' action to impose a constructive trust on the parcel of land retained by defendants. In discussing this issue we have in mind that Nathan Rubin acted as plaintiffs' agent in the purchase of the premises. The oral agreement made between plaintiffs and defendants, as set forth in the bill of complaint, and as found by the trial judge, was not void and unenforceable because contrary to the statute of frauds. In *Stephenson* v. *Golden,* 279 Mich 710, 746, we said:

"'It is the settled doctrine of the Court that where a conveyance is obtained for ends which it regards as fraudulent or under circumstances it considers as fraudulent or oppressive by instant or immediate consequence, the party deriving title under it will be converted into a trustee, in case that construction is needful for the purpose of administering adequate relief; and the setting up the statute of frauds by the party guilty of the fraud or misconduct in order to bar the court from effective interference with his

---

* See CL 1948, § 566.106 (Stat Ann 1953 Rev § 26.906).—Reporter.

wrong doing, will not hinder it from forcing on his conscience this character as a means to baffle his injustice or its effects. CL 1871, §§ 4692, 4693; 1 Story Equity Jurisprudence (12th ed), §§ 330, 333; 2 Story Equity Jurisprudence (12th ed), §§ 1254, 1265; 1 Spence's Equity Jurisprudence, p 511; 2 Spence's Equity Jurisprudence, pp 194, 294 *et seq.;* Hill on Trustees, p 144; *Mestaer* v. *Gillespie,* 11 Ves Jr 621 (32 Eng Rep 1230); *Pickett* v. *Loggon,* 14 Ves Jr 215, 234 (33 Eng Rep 503); *Barnesly* v. *Powel,* 1 Ves Sr 284, 289 (27 Eng Rep 1034); *Young* v. *Peachy,* 2 Atk 254, 257 (26 Eng Rep 557); *Brown* v. *Lynch,* 1 Paige (NY) 147; *Hutchins* v. *Lee,* 1 Atk 447 (26 Eng Rep 284); *Wolford* v. *Herrington,* 74 Pa 311 (15 Am Rep 548); *Gregory* v. *Williams,* 3 Mer 582 (36 Eng Rep 224).' *Huxley* v. *Rice,* 40 Mich 73.

" 'The statutory requirement that a trust must be created by a written instrument, does not apply to such a case, since trusts *ex maleficio* are either expressly or tacitly excepted from its provisions.' Pomeroy's Specific Performance (3d ed), p 375, § 144.

" 'Inasmuch as constructive trusts arise by construction or operation of law and not by agreement or intention, the statute of frauds, and statutes prohibiting parol trusts, have no application to such trusts, and do not prevent the establishment or enforcement thereof, since such statutes are meant to prevent frauds and not to encourage them, and a court of equity will not permit a person to shield himself behind the statute of frauds in order to perpetrate a fraud. So it is frequently said that a constructive trust may be established by parol evidence.' 65 CJ, pp 459–461."

Defendants also urge that parol evidence for the purpose of varying the unambiguous provisions and legal description of the written land contract was inadmissible. In *Stephenson* v. *Golden, supra,* 750, we quoted with approval from 1 Perry on Trusts and Trustees (6th ed), § 226:

" 'The statute of frauds is no obstacle in the way of proof of an actual or constructive fraud in the sale of property. Parol evidence is admissible to establish a trust, even against a deed absolute on its face, if it would be a fraud to set up the form of the deed as conclusive.' "

In the case at bar parol evidence was offered to show that plaintiffs understood the land contract was in fulfillment of defendant Nathan Rubin's agency obligation. Under such circumstances it was not error to offer and receive parol evidence.

It is also urged that plaintiffs are barred by laches from maintaining this suit. The record shows that the first notice that plaintiffs had that defendants claimed the property was when they received a notice from the board of zoning appeals under the date of August 13, 1947. The present suit was instituted less than a month later. Under such circumstances the doctrine of laches has no application.

It is also urged that plaintiffs are not entitled to recover the $500 difference between what defendant paid to Marcella Dudas and what he received for the property. In *Stephenson* v. *Golden, supra,* 759, 760, we cited with approval the following:

"It is settled law that an agent who has been guilty of fraud in the transaction of his principal's business forfeits his rights to a commission as such. 3 CJS, pp 77, 78, and cases cited. It is self-evident one should not be rewarded for violating the law. One who offends against the law may not have the help of the law. 2 Hale Pleas of the Crown (1st Am ed), p 386; Broom's Legal Maxims (9th ed), pp 197, 207; 2 Bouvier's Law Dictionary (Rawle's 3d Rev), p 2135.  *  *  *

" 'An agent's duty to his principal forbids him, when called upon to account for property or funds received by him from his principal or on his account, from disputing his principal's right or title thereto.' 31 Cyc, pp 1481, 1482."

It is also urged that it was prejudicial to defendants' rights to admit in evidence a cancelled check dated March 24, 1943, in the amount of $109, payable to Nathan Rubin for attorney fees. The check was offered as an entry made in the usual course of business. The trial court did not allow plaintiffs any recovery for the amount paid. Under CL 1948, § 617.53 (Stat Ann § 27.902), it was admissible. See, also, *Valenti* v. *Mayer,* 301 Mich 551.

The decree of the trial court is affirmed, with costs to plaintiffs.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.