Jobst W.F. BLACHY, et al., Plaintiffs,

v.

Robert BUTCHER, et al., Defendants.

No. 1:91–CV–979.

United States District Court,
W.D. Michigan,
Southern Division.

Dec. 14, 1998.

David A. Lerner, Plunkett & Cooney, PC, Bloomfield Hills, MI, Jeffrey G. Raphelson, Bodman, Longley & Dahling, LLP, Detroit, MI, William W. Hofmann, Plunkett & Coo-ney, PC, Petoskey, MI, Kathryn D. Zalewski, Bodman, Longley & Dahling, LLP, Ann Arbor, MI, for plaintiffs.

Robert E. Butcher, Trenton, MI, for Alexander M. Butcher, Rosemary C. Butcher, Little Traverse Development Co., H.C. Development Co., defendants.

Daniel M. LaVille, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, John A. Lindquist, Trial Attorney, U.S. Department of Justice, Tax Division, Washington, DC, for Internal Revenue Service, defendant.

### *OPINION*

QUIST, District Judge.

In this case, Plaintiffs have sued Defendants to quiet title to certain condominium interests which Plaintiffs or their predecessors-in-interest purchased from Defendants Little Traverse Development Co. and H.C. Development Co. during the early to mid–1980s. Lawyers Title Insurance Corporation ("Lawyers Title"), which insured the titles to the condominium units, is also a plaintiff in this case. Plaintiffs named the Internal Revenue Service ("Government" or "IRS") as a defendant because it filed Notices of Federal Tax Lien against the condominium units. Now before the Court are Plaintiffs' and Defendants' cross motions for summary judgment on Plaintiffs' constructive trust claim.

### *Facts*

On June 30, 1978, Cedar Cove, a Michigan limited partnership, conveyed certain real property, described as four separate parcels located in Little Traverse Township, Emmet County, Michigan, to Alexander M. Butcher and Rosemary G. Butcher (individually "Alexander" and "Rosemary" and collectively the "Butchers"), for the price of $640,000.00. The property consisted of approximately 100 acres. By warranty deed dated July 6, 1978, the Butchers conveyed two of the four parcels, one consisting of approximately 36.65 acres and the other of approximately 4.16 acres, to Little Traverse Development Co.

("LTDC"), a Michigan corporation owned solely by Alexander.[1]

On July 11, 1978, LTDC obtained construction loans from City National Bank of Detroit, n/k/a First of America Bank, in the amounts of $1,180,000 and $1,380,000, which were secured by mortgages covering approximately 18.37 acres of the 35.65 acre parcel. The June 30, 1978, warranty deed from Cedar Cove to the Butchers, the July 6, 1978, warranty deed from the Butchers to LTDC, LTDC's assumption of Cedar Cove's mortgage, and the mortgages from LTDC to City National Bank of Detroit were recorded on July 12, 1978, with the Emmit County Register of Deeds. That same day, Alexander signed a deed in his capacity as President of LTDC, conveying the unmortgaged portion of the 36.65 acre parcel, consisting of about 17.83 acres (the "17.83 acres"), to the Butchers for $1.00. The deed was recorded on July 14, 1978. At Alexander's request, Lawyers Title issued a revised title commitment on July 18, 1978. Due to the fact that the July 12, 1978, warranty deed was submitted for recording only days earlier, Lawyers Title did not discover the conveyance from LTDC to the Butchers, and Alexander did not inform Lawyers Title about the conveyance.

Alexander executed a Master Deed dated November 1, 1978, on behalf of LTDC, which created a condominium project called Harbor Cove Phase II ("Phase II") that included the 17.83 acres. From 1981 through 1984, LTDC constructed and sold condominiums in Phase II on the 17.83 acres, nine of which were sold to Plaintiffs or their successors-in-interest.

On May 8, 1984, Alexander formed H.C. Development Company ("HCDC"), in which he was majority stockholder, president, and a director. On October 23, 1984, Alexander signed a warranty deed on behalf of LTDC purporting to convey to HCDC approximately 12.60 of the 17.83 acres. On November 7, 1984, Alexander, as president of HCDC, signed a Master Deed creating Harbor Cove

Phase III ("Phase III") on the 12.60 acres. On November 8, 1984, Alexander, as president of HCDC, granted a mortgage to Northwestern Savings and Loan Association on the Phase III property to secure a construction loan in the amount of $1.3 million. Lawyers Title issued a commitment dated November 7, 1984, for the transaction. HCDC subsequently constructed and sold condominiums on the Phase III property to some of the Plaintiffs in this case and other purchasers.

In some of the deeds conveying the condominium units to Plaintiffs, Alexander, acting as president of either LTDC or HCDC, represented that LTDC or HCDC held title to the 17.83 acres. Alexander stated under oath on at least ten occasions in connection with LTDC's requests for construction draws from CNBD that LTDC was the owner of the Phase II property. Alexander also stated under oath on several occasions on behalf of HCDC in connection with its request for construction draws that HCDC was the owner of the Phase III property. In addition, on January 28, 1987, HCDC agreed to convey six of the Phase III units to Northwestern Savings and Loan Association in lieu of foreclosure in satisfaction of a $937,306.76 default on the construction loan.

The Butchers did not claim to own an interest in the 17.83 acres until after Rosemary filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan on March 1, 1991. Prior to that time, the Butchers had not paid taxes on the 17.83 acres and had confirmed in numerous documents that either LTDC or HCDC owned the 17.83 acres. Furthermore, in connection with an appeal from a conviction in a mail fraud case, Alexander submitted a financial affidavit in which he attested under oath that he owned no real property.

### Procedural History

On October 16, 1991, Lawyers Title and the condominium owners to whom Lawyers Title issued title insurance policies sued Al-

---

1. The July 6, 1978, warranty deed shows that the sum of "Five Hundred Forty Thousand and no/100 ($540,000.00) Dollars," which was apparently originally typed in as the amount of consider-

ation, was subsequently stricken and replaced with the language "[n]o revenue stamps required (207.505(1)[sic])." (*See* July 6, 1978, Warranty Deed, Pls.' Br.Supp.Ex. C.)

exander, LTDC, HCDC, and the IRS in Emmet County Circuit Court. Plaintiffs did not sue Rosemary because she was under the protection of the bankruptcy court. However, on February 11, 1992, Plaintiffs filed an adversary proceeding against Rosemary in her bankruptcy case. Plaintiffs sought the imposition of a constructive trust in both cases. The IRS removed the Emmet County case and Judge Benjamin Gibson transferred venue to the Eastern District of Michigan Bankruptcy Court as another adversary proceeding.

Although Rosemary did not list the Property as an asset in her original petition, she subsequently amended the schedules to include the Property after being ordered to do so by bankruptcy Judge Walter Shapero. On or about October 30, 1991, Alexander quit claimed all of his interest in the property to Rosemary. Alexander died on December 26, 1991, and Judge Shapero issued an order substituting the co-personal representatives of Alexander's estate, Rosemary and Robert E. Butcher (Defendants' counsel), for Alexander. Judge Shapero also consolidated the two adversary proceedings.

On January 18, 1995, Judge Shapero granted Plaintiffs' motion for summary judgment and imposed a constructive trust over the Property for the condominium owners' benefit. See Blachy v. Butcher (In re Butcher), Nos. 92–0173, 93–4819, slip op. at 14, 27 (Bkrtcy.E.D.Mich. Nov. 21, 1994). Judge Shapero also found that the constructive trust pre-dated the I.R.S. liens filed in 1987, 1988, 1989, and 1990. See id. at 25. Defendants appealed the order to the district court, and on July 31, 1995, Judge Lawrence Zatkoff issued an order reversing Judge Shapero's January 18, 1995, order on the grounds that under the Sixth Circuit's decision in XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.), 16 F.3d 1443 (6th Cir. 1994), a bankruptcy court may not impose a constructive trust over property of the estate. See Butcher v. Blachy, Nos. 95–CV–70325–DT, 70349–DT, 1995 WL 578193, *3–4 (E.D.Mich. July 31, 1995). Judge Zatkoff concluded that under In re Omegas, the remedy provided by the Bankruptcy Code was to have the debt declared nondischargeable, and

he remanded the case to the bankruptcy court for further proceedings. See id. at *4.

On April 7, 1997, Judge Shapero entered an order abstaining from further consideration of the constructive trust claims because he felt that a constructive trust was still the appropriate remedy. On January 20, 1998, Judge Shapero transferred venue over Count I of the adversary proceeding against Alexander's estate back to this Court and lifted the automatic stay against Rosemary to permit Plaintiffs to add Rosemary as a defendant and add a fraudulent conveyance count against the Butchers. On October 26, 1998, Magistrate Judge Hugh Brenneman Jr. granted Plaintiffs' motion for leave to amend their complaint to add Rosemary as a defendant and add an additional claim for fraudulent conveyance against the Butchers.

### Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. Id. at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. Id. This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. Id. at 251, 106 S.Ct. at 2511 (citing Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "con-

crete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## Discussion

### I. Standing and Jurisdiction

■ Before addressing Plaintiffs' request for imposition of a constructive trust, the Court will address Defendants' arguments that Plaintiffs lack standing and that this Court does not have jurisdiction over Plaintiffs' constructive trust claim. Defendants first contend that Plaintiffs lack standing to maintain a claim for imposition of a constructive trust. Defendants' standing argument is actually a conglomeration of many different arguments, each of which lacks merit.[2]

Defendants argue that Plaintiffs lack standing because they were not parties to the July 12, 1978, warranty deed from LTDC to the Butchers, they were not creditors of the Butchers, and Lawyers Title did not insure that conveyance. Defendants also argue that Plaintiffs have no standing to seek a constructive trust for the benefit of LTDC and HCDC because the corporations did not consent to such relief. Further, Defendants argue that the condominium purchaser Plaintiffs have no standing to assert their claim because they relied upon and received title commitments from Lawyers Title and will not sustain any loss because they will be indemnified by Lawyers Title.

■ To establish Constitutional standing, a plaintiff must establish three elements: "(1) an 'injury in fact' that is concrete and particularized; (2) a connection between the injury and the conduct at issue—the injury must be fairly traceable to the defendant's action; and (3) likelihood that the injury would be redressed by a favorable decision of the Court." *Southwestern Pa. Growth Alliance v. Browner,* 144 F.3d 984, 988 (6th Cir.1998) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)); *see also Peoples Rights Org. v. City of Columbus,* 152 F.3d 522, 527 (6th Cir.1998). A plaintiff must also show the "existence of an actual case of controversy." *Citizens for Legislative Choice v. Miller,* 144 F.3d 916, 920 (6th Cir.1998). Plaintiffs clearly meet all of the requirements for standing. Plaintiffs have alleged and shown an injury in fact, namely, defective titles to the condominiums which they purchased from LTDC and HCDC. The injuries are traceable to the Butchers' conduct in exercising control over LTDC through the execution and delivery of the July 12, 1978, warranty deed conveying title to the 17.83 acres to the Butchers. The entire point of Plaintiffs' suit is that a cloud exists on their title by reason of the July 12, 1978, warranty deed. Thus, Alexander and Rosemary, by virtue of the interests she obtained through the July 12, 1978, warranty deed and the October 30, 1991, quit claim deed from Alexander, have a substantial connection to the injuries which Plaintiffs have suffered. Finally, a favorable ruling from this Court, i.e., imposition of a constructive trust, would remove the cloud from Plaintiffs' titles and relieve Lawyers Title of its indemnity obligations under its policies. Thus, it is irrelevant that the Plaintiff purchasers were not parties to the July 12, 1978, warranty deed, that Lawyers Title did not insure that conveyance, or that Plaintiffs are not credi-

---

**2.** One such argument, which does not merit any significant substantive review, is that Lawyers Title is barred from seeking relief to resolve the purchasers' title problems by M.C.L. § 450.681, which prohibits the unauthorized practice of law by corporations, and M.C.L. § 500.7304, which prohibits the unauthorized practice of law by title insurance companies. Neither section applies because Lawyers Title is represented in this case by attorneys, who also happen to represent the purchasers. The purchasers were named as plaintiffs pursuant to the title insurance policies, which permit Lawyers Title to take any legal action necessary to obtain clear title for the purchasers. Thus, Lawyers Title is simply attempting to fulfill its obligations under the title policy by providing the purchasers clear title to the condominium units they purchased.

tors of the Butchers, because the relief sought in this case will provide a remedy to all Plaintiffs for the harm caused by the July 12, 1978, warranty deed.

Defendants' argument that Lawyers Title does not have standing to bring this action ignores the provision in the policies which permits Lawyers Title to remedy title defects for its insureds. The policies provide that

> [Lawyers Title] shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as insured or to prevent or reduce loss or damage to the insured. [Lawyers Title] may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder....

(Policy No. 113–00–437585, Conditions and Stipulations ¶ 4(b), attached to Pls.' Br. Opp'n as Ex. J.) Pursuant to its contractual agreement with the purchasers to insure marketable title, Lawyers Title is entitled to pursue a claim against the Butchers to establish title to the property in conformity with the policies. Thus, while Defendants would no doubt prefer that the purchasers seek indemnity under the title policies rather than clear title through their instant claim, no legal principle precludes Lawyers Title or the purchasers from pursuing a constructive trust remedy.

Defendants also assert that the Court lacks jurisdiction because none of the Defendants has an interest in the property over which Plaintiffs seek a constructive trust. Defendants point out that neither LTDC nor HCDC has any interest in the property and that neither Alexander, nor his estate, has any separate interest in the property. Instead, Defendants argue, the October 31, 1991, quit claim deed from Alexander to Rosemary of his interest in the property destroyed the tenancy by the entireties and left Rosemary with sole title to the property.

■ Defendants are correct that under Michigan law, a conveyance of an entireties interest by one spouse to the other terminates the entireties interest. *See* M.C.L. § 557.101. To the extent Defendants are contending that no Defendant in this case possesses an interest in the property, however, the argument is without merit. Defendants acknowledge that Rosemary received Alexander's interest in the property under the October 30, 1991, quit claim deed. Pursuant to Magistrate Judge Brenneman's October 26, 1998, order, Plaintiffs have filed a first amended complaint naming Rosemary as a defendant. Thus, Rosemary is a party who holds an interest in the property that may be subjected to a constructive trust.[3]

■ Defendants also argue that the Court has no jurisdiction over Plaintiffs' constructive trust claim because Rosemary's interest in the property is under the jurisdiction of the bankruptcy court. This argument is also without merit. Plaintiffs are not seeking imposition of a constructive trust on Rosemary's interest in her bankruptcy estate, which is subject to the bankruptcy court's jurisdiction, but rather on the interest which she received from Alexander either though the October 31, 1991, quit claim deed or as a result of his death in December 1991, after her bankruptcy case was commenced. The interest that Rosemary held in the property as a tenant by the entireties on March 1, 1991, became property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1) (stating that the property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). Under § 541(a)(5)(A), any property interest which the debtor acquires "by bequest, devise, or inheritance" within 180 days after the petition is filed also becomes property of the estate. 11 U.S.C. § 541(a)(5)(A).

---

**3.** Defendants also suggest that the interest Rosemary received from Alexander is exempt from the relief Plaintiffs seek because Rosemary is not liable for Alexander's debts. It is true that under Michigan law a creditor of one spouse cannot reach property that is held by the entireties. *See Craft v. United States*, 140 F.3d 638, 642 (6th Cir.1998). However, Defendants' argument misses the point. At least with respect to their constructive trust claim, Plaintiffs do not contend that they are creditors of either Alexander or Rosemary, nor are they seeking to enforce a debt against the property. They seek the remedy of a constructive trust over the non-bankruptcy interest held by Rosemary.

Rosemary obtained her interest from Alexander after she filed her petition and, although § 541(a)(5)(A) appears inapplicable to the manner in which Rosemary received her interest from Alexander, beyond the 180 day period set forth in § 541(a)(5)(A). Thus, the interest that Rosemary received from Alexander is not part of the estate subject to the bankruptcy court's jurisdiction. In fact, in the bankruptcy court proceedings, Defendants acknowledged that Rosemary holds a separate, non-bankruptcy interest when they stated, "[o]ne-half of the subject property was exempt from Debtor's bankruptcy estate under the provision of 11 U.S.C. § 522(b)(2)(B) because the deed of October 30, 1991, was not signed within six months of Debtor's March 1, 1991 filing date, and, [Alexander] did not die until December 26, 1991." [4] (Resp. of Rosemary C. Butcher, Debtor, to Trustee's Motion for Summary Judgment at 2, ¶ 4, attached to Pls.' Br. Opp'n as Ex. Z.)

## II. Statute of Limitations

Defendants also argue that Plaintiffs' claim is barred by the applicable statute of limitations. This argument is also without merit. The period of limitations for actions for the recovery or possession of lands is set forth in M.C.L. 600.5801, which provides that:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

> \* \* \* \* \* \*

> ■ (4) **Other cases.** In all other cases under this section, the period of limitation is 15 years.

M.C.L. § 600.5801. The fifteen year limitations period governs actions to quiet title. *See Gorte v. Department of Transp.*, 202 Mich.App. 161, 165, 507 N.W.2d 797, 799 (1993). In *Thomas v. Steuernol*, 185 Mich. App. 148, 460 N.W.2d 577, (1990) (per curiam), the court held that the five-year limitations period set forth in M.C.L. § 600.5801(1) for recovering real property interests under an executor's deed applied to the plaintiff's action to recover oil and gas lease interests. *See id.* at 152, 460 N.W.2d at 580. In this case, Plaintiffs seek to impose a constructive trust on Rosemary's non-bankruptcy interest in the Property in order to procure clear legal title to their condominium units. The suit is, in essence, a quiet title action. Therefore, the 15 year period set forth in M.C.L. § 600.5801(4) governs. Because the first deed was granted to Plaintiffs on October 22, 1981, Plaintiffs' suit, which was filed in state court on October 16, 1991, is within the limitations period.

■ Plaintiffs' suit was also filed in time even if the shorter ten year period set forth in M.C.L. § 600.5807(4) "for actions founded upon covenants in deeds and mortgages of real estate" applies. M.C.L. § 600.5807(4). As noted above, Plaintiffs filed their suit in state court less than ten years after the date LTDC conveyed the first deed. Defendants' contention that the accrual date of Plaintiffs claim was July 12, 1978—the date on which LTDC conveyed title to the Butchers—is wrong, because Plaintiffs' claims did not accrue until Plaintiffs "first [became] entitled to the possession of the premises under the title upon which the [ ] action is founded." M.C.L. § 600.5829(5). Plaintiffs did not become entitled to possession of the condominium units until they received their warranty deeds from LTDC and HCDC, beginning on October 22, 1981.[5]

4. Although not raised by Plaintiffs, Defendants may be judicially estopped by their prior arguments in the bankruptcy court from arguing that Rosemary does not possess a separate interest not subject to the bankruptcy court's jurisdiction. *See Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217–18 (6th Cir.1990).

5. Plaintiffs also contend that their complaint was filed in time even if the six year period for breach

of contract under M.C.L. § 600.5805 applies, because the discovery rule applies. Plaintiffs assert that they discovered the conveyance to the Butchers in 1991 and filed suit that same year, but have not pointed to any specific evidence to support their claim. However, the evidence, which is not in dispute, shows that until 1991, the Butchers represented that they did not own the property and there is no indication that any-

## III. Propriety of Constructive Trust

The central issue before the Court is whether the facts at hand support the remedy of a constructive trust in favor of Plaintiffs. Under Michigan law,

[a] constructive trust may be imposed "where such trust is necessary to do equity or to prevent unjust enrichment...." Hence, such a trust may be imposed when property " 'has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property....' " Accordingly, it may not be imposed upon parties "who have in no way contributed to the reasons for imposing a constructive trust." The burden of proof is upon the person seeking the imposition of such a trust.

*Kammer Asphalt Paving Co. v. East China Township Sch.*, 443 Mich. 176, 188, 504 N.W.2d 635, 641–42 (1993) (citations omitted).

In *Kren v. Rubin*, 338 Mich. 288, 61 N.W.2d 9 (1953) (en banc), the Michigan Supreme Court affirmed the trial court's judgment imposing a constructive trust upon the defendant, who agreed to purchase certain property from a third party for the plaintiffs but, after completing the purchase, failed to convey the entire parcel to the plaintiffs. *See id.* at 294, 61 N.W.2d at 12. The court concluded that the trial judge's appraisal of the evidence was not erroneous. In assessing the evidence the trial judge observed:

"A very strong factor in this case, in my judgment, is a question of taxes. These people have continued on the tax rolls for the entire piece of property, and have paid the taxes during all this period of time, no effort being made by the defendant to have any changes made in the tax roll, or to assume the taxes for the portion which he retained."

*Id.* at 292–93, 61 N.W.2d at 11 (quoting trial court).

In *McCreary v. Shields*, 333 Mich. 290, 52 N.W.2d 853 (1952) (en banc), the plaintiff and her husband purchased property (Lot K) pursuant to a deed which mistakenly described the adjacent vacant parcel (Lot L). *See id.* at 291, 52 N.W.2d at 854. The plaintiff and her husband resided in the house on Lot K, but mistakenly paid the taxes on Lot L. *See id.* at 292, 52 N.W.2d at 855. Due to the delinquent tax status of Lot K, the State received title to Lot K through delinquency proceedings and conveyed the property to the defendant for $150. *See id.* The defendant admitted that she believed she had purchased a vacant lot, and the State had not attempted to collect rent from the plaintiffs. *See id.* at 293, 52 N.W.2d at 855. The trial court awarded Lot K to the plaintiff. In affirming, the Michigan Supreme Court stated, "[d]efendant [ ] has no just ground for complaint that she is not allowed to unjustly enrich herself out of the error common to all three parties...." *Id.* at 294, 52 N.W.2d at 855. The court concluded that a constructive trust was a proper remedy to prevent the defendant's unjust enrichment. *See id.* at 294–95, 52 N.W.2d at 855–56.

■ Although actual fraud will certainly support the imposition of a constructive trust under Michigan law, it is not a prerequisite. "Fraud in the inception [is] not require[d], nor deceit, nor chicanery in any of its valied [sic] guises, for it is not necessary that property be wrongfully acquired. It is enough that it is unconscionably withheld." *Kent v. Klein*, 352 Mich. 652, 657, 91 N.W.2d 11, 14 (1958) (en banc).

■ The facts in this case, which are not in dispute, establish beyond question that a constructive trust over the interest in the property which Alexander conveyed to Rosemary is both appropriate and necessary to prevent the Butchers from being unjustly enriched at Plaintiffs' expense. While the facts may not conclusively demonstrate fraud, Alexander's failure to inform Lawyers Title of the July 12, 1978, conveyance, which occurred shortly before Lawyers Title issued a title policy to LTDC, when Alexander was obviously aware of the conveyance, is a

one else had knowledge of the July 12, 1978,

deed prior to that time.

strong indication of fraud.[6] On July 12, 1978, the Butchers recorded warranty deeds conveying the property from Cedar Cove to the Butchers and from the Butchers to LTDC. That same day, Alexander, acting for LTDC, conveyed the portion of the property in dispute back to himself and Rosemary. From that point on, the Butchers, both individually and through LTDC or HCDC, represented to lenders, purchasers, the State of Michigan, and other parties that LTDC or HCDC owned the property. At the same time, the Butchers failed to disclose the existence of the July 12, 1978, warranty deed which they now claim gave them clear title. Finally, as in *Kren*, the Butchers permitted Plaintiffs to pay the taxes on the property for many years without ever claiming responsibility for the taxes.[7] Given these facts, this Court, like Judge Shapero, "can hardly imagine a more compelling case for the imposition of a constructive trust." *Blachy v. Butcher (In re Butcher)*, Nos. 92–0173, 93–4819, slip op. at 12 (Bkrtcy.E.D.Mich. Nov. 21, 1994).

The Court also finds that the constructive trust should be imposed as of July 12, 1978, the date of the conveyance giving rise to the inequitable conduct. "The constructive trust is purely a remedial device, 'the formula through which the conscience of equity finds expression'" *Nelson v. Woodworth*, 363 Mich. 244, 250, 109 N.W.2d 861, 864 (1961) (en banc) (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919)). "When the remedial device of the constructive trust is employed, chancery orders whatever conveyance will remedy the wrong suffered ...." *Kent*, 352 Mich. at 658, 91 N.W.2d at 15. The constructive trust remedy treats the beneficiary as the equitable owner of the property held in trust as of the date of the wrongful or inequitable act. *See McTevia v. Adamo (In re Atlantic Mortgage Corp.)*, 69 B.R. 321, 328 (Bkrtcy.E.D.Mich.1987). Thus, such trusts may relate back to the time of the wrongful or inequitable act. *See id.* (finding that "[a]llowing a constructive trust to relate back is consistent with Michigan doctrine" and holding that a constructive trust would be imposed for investors who could show that the debtor improperly withheld possession of their promissory notes as of the date possession was first improperly withheld). Therefore, July 12, 1978, is the date on which the constructive trust arose.

## IV. Effect of Constructive Trust on the I.R.S.'s Lien

The final issue which the Court must address is whether the constructive trust strips the I.R.S.'s lien, which arose after the date of the constructive trust. The I.R.S. contends that a constructive trust cannot be retroactively imposed to avoid federal tax liens which have attached to property in which the taxpayer has a voidable interest. In support of its position, the I.R.S. relies heavily on the case of *SEC v. Levine*, 881 F.2d 1165 (2d Cir.1989). The Court has reviewed the *Levine* case and agrees with Judge Shapero's assessment that *Levine* is distinguishable

---

**6.** Defendants contend that Plaintiffs are not entitled to constructive trust relief because Lawyers Title was negligent in failing to discover the July 12, 1978, deed or knew about the deed but decided to insure over it. The argument fails because Defendants have not shown that Lawyers Title was aware of the July 12, 1978, deed prior to 1991 or that Lawyers Title had any reason to suspect that such a deed existed. The argument is especially unconvincing because Alexander, who was certainly in the best position to notify Lawyers Title of the deed, failed to do so and made many affirmative representations to Lawyers Title which directly contradicted the deed. Finally, Defendants have cited no case to the Court which would support a negligence defense under the circumstances in this case, where Defendants can offer no plausible reason why they should have title to the property.

**7.** Another of Defendants' specious arguments which merits no more than a footnote is that by furnishing title insurance policies to the purchasers of the condominium units, Defendants were somehow released from the relief which Plaintiffs now seek. While LTDC and HCDC may have complied with their statutory obligations under M.C.L. § 559.194 by furnishing title policies to the initial purchasers of the condominiums, Defendants have offered no evidence that Lawyers Title agreed to release Defendants from any claims. Moreover, if Defendants' argument had any merit at all, it would be tantamount to granting a license to engage in fraud on any title insurance company, or for that matter, any insurance company. Thus, so long as the unscrupulous seller is able to prevent an insurer from discovering another conveyance, the seller could double his profits by selling the property twice.

from the case at hand. While the district court in *Levine* did find that a constructive trust should be imposed on the profits which the defendants illegally obtained, the Second Circuit held that the district court erred because there was no judicial determination that the defendants had actually engaged in conduct that would support a constructive trust remedy. *See* 881 F.2d at 1174. The court noted that the district court's holding was based upon consent judgments in which "the defendants neither admitted nor denied any of the allegations of the civil complaints; and the judgments specified that they were consented to without admission or adjudication." *Id.* The court's alternative reasoning is not applicable in this case because the court did not address the effect of a constructive trust on federal tax liens. However, even though the court rejected the SEC's contention that the principal issue was the relationship between a constructive trust and federal tax liens, it acknowledged that "this might be a proper characterization of the issues if [it was] reviewing relief granted after adjudication. . . ." *Id.* at 1178.

 The I.R.S. contends that a constructive trust cannot relate back to defeat a prior federal tax lien because only liens which are "choate," or properly perfected prior to the time the federal tax lien attaches, can prime a federal tax lien. The I.R.S. cites a number of cases involving the priority of federal tax liens over competing interests to support its position. However, while it is a correct statement of the law that only interests that are perfected, i.e., where nothing more remains to be done to enforce the lien, will prime federal tax liens, *see United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954), the cases which the I.R.S. cites are not persuasive because they do not address the issue of whether a constructive trust that arises prior to the date of federal tax liens defeats such liens.

 Pursuant to 26 U.S.C. § 6321, federal tax liens attach only to "property and rights to property" held by the taxpayer. 26 U.S.C. § 6321. In determining whether a tax lien attaches to property, state law governs the nature of the taxpayer's interest, while federal law controls the consequences of the state-created interest. *See United States v. National Bank of Commerce*, 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985). Thus, " 'when attempting to establish its lien to property of a delinquent taxpayer' " the I.R.S. can " 'never [have] better [rights] than those which the taxpayer had' " under state law. *Hobson v. United States*, 168 F.Supp. 117, 119 (W.D.Mich.1958) (quoting 9 *Mertens Law of Federal Income Taxation* § 54.52).

In *FTC v. Crittenden*, 823 F.Supp. 699 (C.D.Cal.1993), *aff'd* 19 F.3d 26 (9th Cir. 1994), the court imposed a constructive trust on certain funds that the defendant had improperly obtained from his customers through his business. The I.R.S. argued, *inter alia*, that it was entitled to first priority in the funds on the basis of its tax lien. The court rejected the argument, stating:

> The Court need not determine whether the IRS is entitled to statutory priority over the receivership funds because those funds belong to [the defendant's] customers under a constructive trust, not to [the defendant] himself. Since the funds do not belong to [the defendant], the IRS lien does not attach to the receivership funds.

*Id.* at 704.

Similarly, in *Reliance Insurance Co. v. Brown*, 40 B.R. 214 (W.D.Mo.1984), the plaintiff, Reliance Insurance Company, filed an adversary proceeding in the bankruptcy court seeking a constructive trust over certain funds obtained by the debtor through a fraudulent insurance scheme. The bankruptcy court held that the facts warranted the imposition of a constructive trust. On appeal to the district court, the trustee argued that the constructive trust could not defeat federal tax liens which arose prior to the bankruptcy court's order. *See id.* at 218. The Court observed that

> [t]he basic rule regarding the creation of constructive trusts, however, is that "the decree establishing the constructive trust amounts to a holding that the defendant ought to be treated as if he had been a trustee for the plaintiff from the time the defendant began to hold the property unconscionably. The constructive trust does

not exist merely because of the wrongful holding, but requires a court decree for its origin and this decree is retroactive in effect to the date when the unlawful holding began." Accordingly, the constructive trust arose prior to the time the tax liens are claimed to have arisen, and, therefore, the imposition of the constructive trust relates back and defeats the tax lien.

*Id.* (citation omitted) (quoting Bogert, *The Law of Trusts* 288 (5th ed.1973)).[8] Similarly, in *TMG II v. United States,* 778 F.Supp. 37 (D.D.C.1991) (mem.op.), the court found that federal tax liens would not attach to property subject to a constructive trust, but ultimately held that the plaintiffs had failed to demonstrate a basis for a constructive trust. *See id.* at 46–50. Notably, in that case, the IRS conceded that "tax liens do not attach to properties subject to a constructive trust because, while the taxpayer may have legal title, the constructive trust gives its 'beneficiary' equitable title." *Id.* at 46.

▆▆▆▆ The Court agrees with the courts in *Crittenden, Reliance,* and *TMG II* and finds that the reasoning in those cases is also applicable to constructive trusts arising under Michigan law. As noted above, a trustee of a constructive trust holds bare legal title to the property that is subject to the trust for the benefit of the beneficiary. *See Kammer Asphalt,* 443 Mich. at 188, 504 N.W.2d at 641–42. The parties in this case, by their actions, demonstrated that they understood that Plaintiffs were the true owners of the property and that Defendants had no right to possess, use, or convey it. For more than thirteen years, Alexander, both individually and through LTDC and HCDC, acknowledged that Plaintiffs were the true owners of the property and that good title had been conveyed to Plaintiffs through the warranty deeds. Similarly, Rosemary did not claim an interest in the property until after Judge Shapero ordered her to amend her bankruptcy schedules to list the property as an asset. Under these facts, the Court concludes that the Butchers did not have an interest in the

property to which the IRS's lien could attach. Therefore, the Court concludes that the IRS's Notices of Federal Tax Liens are subordinate to Plaintiffs' interests in the property.

### Conclusion

For the foregoing reasons, the Court will grant Plaintiff's motion for summary judgment and deny Defendants' motion for summary judgment.

---

**8.** The result in *Reliance,* imposition of a constructive trust by a bankruptcy court over assets in the estate, is inconsistent with the Sixth Circuit's holding in *In re Omegas Group.* However, the *Reliance* court's conclusions with respect to

the relationship between federal tax liens and constructive trusts under state law are still relevant in this case, as *In re Omegas* does not preclude this Court from imposing a constructive trust.